CLYDE ELLIOTT, A MINOR, BY DALE ELLIOTT, HIS NEXT FRIEND, AP-
PELLANT, V. MISSOURI PACIFIC RAILROAD CO., RESPONDENT.—52
S. W. (2d) 448.

Kansas City Court of Appeals.   July 5, 1932.

*Thos. N. Haynes* for appellant.

, *C. W. Hight, L. J. Bishop* and *D. C. Chastain* for respondent.

TRIMBLE, P. J.—Clyde Elliott, eighteen years of age, was driv-
ing an automobile in a southeasterly direction along First street in
the city of Pleasant Hill about four A. M., of March 22, 1931.   De-
fendant's railroad crossed said street at grade in a general north-
westerly and southeasterly direction.   The street paving was a
concrete slab, and on the crossing a train of dark colored coal cars
was permitted by the defendant to remain standing for thirty minutes
or more across said street completely blocking all traffic on said street
which was extensively used at all hours of the day or night by all

kinds of motor and other vehicles as well as by pedestrians. It was very dark and the weather was misty and foggy. With matters in this condition Clyde's automobile coming along the street violently crashed against the cars of said train standing on the crossing, completely wrecking the automobile and seriously injuring its driver.

He, through his father as next friend, brought this suit for $4000 damages. The defendant filed a demurrer to the petition alleging that it did not state facts sufficient to constitute a cause of action. The basis of the demurrer, according to the statement in defendant's brief, is "that the petition shows on its face that the plaintiff was guilty of such contributory negligence as to bar recovery."

The trial court sustained the demurrer, whereupon plaintiff appealed.

The petition is as follows:

"Plaintiff, Clyde Elliott, states that he is a resident of Cass county, Missouri; that he is a minor of the age of eighteen years; that on the 8th day of August, 1931, Dale Elliott, on plaintiff's request in writing, was by the clerk of the circuit court of Cass county, Missouri, duly appointed and constituted next friend of plaintiff for the purpose of instituting and prosecuting this action; that said Dale Elliott has filed with the clerk his written acceptance of said appointment, and this action is prosecuted in behalf of plaintiff, Clyde Elliott, by said Dale Elliott as next friend.

"Plaintiff states that defendant, on the 22nd day of March, 1931, for many years prior thereto was and now is a railroad corporation, incorporated under the laws of the State of Missouri, having and maintaining business offices in the county of Cass in said State, and owning and operating a line of railroad extending through said county of Cass and through the city of Pleasant Hill, in said county, said City of Pleasant Hill, at all said times, being a duly incorporated city.

"That at all dates herein mentioned there was and is a certain street and highway known as First street otherwise known as Missouri State Highway No. 7, extending in a northwesterly and southeasterly direction through the main business part of said city, and that said First street, at all dates herein mentioned, at a point within the corporate limits of said City of Pleasant Hill, was and is crossed, at grade, by defendant's said line of railroad and railroad tracks which also extend in a general northwesterly and southeasterly direction through said city, and which said First street is surfaced with a concrete slab.

"That at all dates herein mentioned said First street, at and near the said street crossing, was and is very extensively used for traffic, both day and night, by all kinds of vehicles, including motor vehicles as well as pedestrians, all of which defendant has at all times well known.

"That on the 22nd day of March, 1931, at about the hour of four o'clock A. M., while it was very dark and the weather was misty and foggy, defendant, in operating its said line of railroad, had placed and left standing upon and along its said railroad track and over and upon said First street crossing, a train of freight cars, consisting of dark colored coal cars, and then and there wrongfully, unlawfully, carelessly and negligently permitted said train of cars to remain standing continuously upon said street crossing for a period of more than thirty minutes, so that said First street was completely obstructed and blocked to all traffic on said street and over said crossing, all of which defendant at all times then and there well knew.

"That while said street crossing was so obstructed by defendant and been by it so obstructed continuously for more than thirty minutes as aforesaid and next before the time of the collision complained of herein, plaintiff, Clyde Elliott, not having any knowledge or information that said crossing was so obstructed, was then and there in the act of driving and operating an automobile, in a southeasterly direction, along and upon said First street and approaching said street crossing, and in so doing, was in the exercise of due and proper care on his part, and had no warning or signal of any kind of said obstruction of said street crossing so caused by defendant, and, by reason of the darkness of the night, the foggy and misty condition of the atmosphere, the dark color, condition and location of defendant's said cars so obstructing said crossing, could not by the exercise of proper care on his part, and did not discover defendant's said cars so obstructing said crossing until the said automobile, which plaintiff was driving, was too close to defendant's said train of cars so obstructing said crossing, to avoid collision therewith, and the said automobile, then and there being driven by plaintiff, came violently and forcibly in collision with defendant's said train of cars then and there standing upon and obstructing said street crossing, and that by reason of such collision said automobile was completely wrecked, and plaintiff, Clyde Elliott, received the injuries hereinafter mentioned and sued for.

"Plaintiff states that said collision and plaintiff's injuries so resulting therefrom were caused by and were the direct and immediate result of the several wrongful, unlawful, careless and negligent acts and conduct of defendant, its agents, servants and employes as follows, to-wit:

"1.  The defendant, its agents, servants and employes, at the time and place aforesaid, wrongfully, unlawfully, carelessly and negligently failed to give any warning whatever by flagman, watchman, signal light or other device of the presence of said train of cars so standing upon and obstructing said crossing, or clear said crossing, as was its duty to do.

"2. That defendant, its agents, servants and employes, then and there in charge and management of its railroad and train of cars, at the time and place aforesaid, for a period of more than thirty minutes continuously and next before the time of said collision, wrongfully, unlawfully, carelessly and negligently permitted its said train of cars to stand upon and obstruct said street crossing, thereby obstructing the traffic on said First street and over said crossing.

"3. That at all times herein mentioned and for many years next prior to the 22nd day of March, 1931, the defendant well knew that said street crossing, at all times, both day and night, was extensively used for travel by persons driving motor vehicles and otherwise, and defendant at all times well knew of the danger and peril to travelers on said street, incident to and caused by the obstruction of said street crossing by defendant's train of cars, and well knew that, in the exercise of ordinary care on its part, it was necessary to have at said street crossing a watchman, guard, signal light or other device to warn travelers, on said street, of the said obstruction on said crossing and of the dangers caused thereby, yet, notwithstanding such knowledge on defendant's part, the defendant, its agents, servants and employes, at the time and place aforesaid, wrongfully, unlawfully, carelessly and negligently permitted said train of cars to stand and remain upon said street crossing for a period of more than thirty minutes continuously next before the time of the collision complained of herein, and thereby completely obstruct said crossing for such period of time, so that said crossing could not be used by travelers on said street, without having any watchman, guard, signal light or other device to warn plaintiff and other users of said street, of the danger and peril so caused by such obstruction, and without cutting said train or making other provision for the safe passage of travelers over said street crossing.

"4. That at the time plaintiff was so approaching said street crossing as aforesaid and was about to use the same, the defendant, its agents, servants and employes knew or by the exercise of ordinary care on their part, could and would have known that plaintiff was so approaching and about to use said street crossing while it was so obstructed by defendant's said train of cars, and knew of the danger and peril, or by the exercise of ordinary care on their part, could and would have known of the danger and peril to which plaintiff was subjected, in time, so that, by the exercise of ordinary care on their part, they could have given proper warning to plaintiff of said obstruction and the danger and peril incident thereto, and thereby avoided the said collision and injury to plaintiff, but that, notwithstanding said knowledge, the defendant, its agents, servants and employes then and there wrongfully, unlawfully, carelessly and negligently permitted said train of cars to remain standing upon said street crossing and obstruct the same as aforesaid continuously for

a period of more than thirty minutes next before the time of such collision, without giving any warning whatever, or providing other means to prevent the injuries to plaintiff.

"Plaintiff states that by reason of said collision, plaintiff was then and there with great force and violence thrown against the said automobile and parts thereof, his body, head, face, arms, back, chest and lungs were by said collision severely jammed, crushed, wrenched, twisted, strained, cut, bruised, wounded and made sore and lame, his nervous system was severely shocked, he received a severe physical and mental shock and was thereby dazed, his lungs and other internal organs were crushed and ruptured and caused to bleed profusely, he thereby received deep cuts, bruises and wounds on his forehead, a deep and long cut on the outer part of the left thigh, a deep and long cut on the inner side of the right ankle, a deep cut on the left arm above and near the elbow, a deep cut on the right shin, his back, limbs and all the muscles, nerves and other tissues of his body were severely wrenched, twisted and strained, made sick and sore, his lungs were permanently injured, he was for many days threatened with pneumonia, a short and difficult breathing were thereby caused, that said cuts and wounds so received have healed leaving a permanent scar tissue which mars, disfigures and defaces the personal appearance of plaintiff, and that by reason of said injuries, plaintiff's nervous system was permanently impaired, and that by reason of said injuries plaintiff was caused to suffer and does now suffer great bodily pain and mental distress and will continue to so suffer so long as he lives, and that by reason of said injuries plaintiff was compelled to and did remain confined to his bed and room for a long space of time.

"Plaintiff further states that by reason of the injuries so received he has been damaged in the sum of four thousand dollars for which sum, with costs of suit, he prays judgment against defendant."

Analysis of the petition reveals, that, omitting the allegations concerning the status, character and qualifications of the parties, it, in legal effect, makes the following allegations:

1. First street, also known as Missouri State Highway No. 7, is a concrete paved highway lying northwesterly and southeasterly through the main business part of Pleasant Hill, an incorporated city of Cass county, Missouri, and is crossed at grade by defendant's railway line, also extending in a general northwesterly and southeasterly direction through said city.

2. That, at and near said crossing, said street was *extensively used* for traffic, day and night, by all kinds of vehicles, which was *well known to defendant.*

3. That at four o'clock in the morning, when it was *very dark* and the weather *misty and foggy,* defendant placed and left standing on the crossing for more than thirty minutes a train of *dark colored*

*coal cars,* completely obstructing and blocking all traffic on said street over said crossing, all of which defendant, at all times, then and there well knew;

4. That while said crossing was, and had been, so obstructed for more than thirty minutes, next before the collision complained of, plaintiff, driving an automobile in a southeasterly direction on said First street and approaching said crossing, and in the exercise of due and proper care on his part, with no warning or signal of said obstruction, and, by reason of the darkness of the night, the foggy, misty condition of the atmosphere, the dark color, condition and location of said cars obstructing the crossing, plaintiff could not, by the exercise of due care, discover said cars, and did not discover them, until the automobile was too close to avoid collision therewith, and said automobile came into violent collision with said cars, and was thereby completely wrecked and plaintiff was severely injured.

5. That the collision and injuries were caused by, and were the direct and immediate result of, the following several wrongful, unlawful, careless and negligent acts and conduct of defendant, to-wit:

a. Defendant wrongfully, unlawfully, carelessly and negligently failed to give any warning of said cars obstructing said crossing by flagman, watchman, signal light or other device, if any, of the presence of the said train of cars as was its duty to do.

b. That defendant at all times well knew that said crossing was extensively used for travel at all times, night and day, and *well knew the danger* to travel caused by said obstruction, and *well knew* that, in the exercise of ordinary care on its part, it was *necessary to have a watchman, guard, signal light,* or other appliance, *to warn travelers* of the obstruction and danger, yet continued to negligently permit said cars to remain on the crossing for more than thirty minutes next before the collision.

6. That at the time plaintiff was approaching and about to use the crossing defendant knew, or by the exercise of ordinary care could have known, that plaintiff was approaching and about to use the crossing while so obstructed, and knew, or by the exercise of ordinary care could and would have known of plaintiff's peril in time, so that plaintiff could have been warned, and the collision avoided, but notwithstanding, defendant *negligently permitted* said cars to stand on said crossing *continuously for more than thirty minutes* next before such collision *without giving any warning* whatever.

7. That by reason thereof plaintiff was injured in the particulars named.

As said before, defendant's reliance upon the demurrer is based on the theory that the petition reveals that the plaintiff was guilty of contributory negligence as a matter of law.

We are at a loss to discover wherein the petition discloses *as a matter of law* any such negligence on plaintiff's part. The petition says plaintiff in approaching said crossing, "was in the exercise of due and proper care" and "had no warning or signal of any kind" of the existence of said obstruction and, by reason of the *darkness,* the *foggy* and *misty condition of the atmosphere,* the *dark color, condition and location of the cars,* plaintiff *could not,* by the exercise of proper care, *and did not, discover* said cars until the automobile was too close to the obstructing cars to avoid the collision." (Italics ours.)

Nor can such contributory negligence so appear unless we must say that, *regardless of the circumstances,* the mere driving of the automobile down the street and into a silent, invisible, unexpected and *waiting* line of dark coal cars, is negligence as a matter of law. Respondent says in its brief that "the petition is silent as to whether or not he (plaintiff) had lights upon his car, but since he was required by express statute to have the light burning on his car at four A. M., we are *entitled to assume* that his car was equipped with two headlights which would, *under normal atmospheric conditions,* reveal objects 150 feet ahead." (Italics ours.) But the atmospheric conditions were *not* normal. And before it can be said as a legal conclusion that plaintiff was negligent in not seeing the cars, it must be *assumed* that, under the conditions and circumstances of that particular occasion, the cars *could have been seen* in time to have stopped. But it is well known to every motorist, of more than mere infantile experience, that with an obstruction of the color here shown, motionless and without noise, *blending perfectly* with the moist pavement beyond and the dark sky above, and the automobile lights filtering through the particles of mist, the coal cars would not be visible until almost upon them, and it then is everlastingly too late. It is a well-known fact that under such conditions the paved roadway ahead will present a uniform appearance looking entirely like the open roadway until within a few feet of an object when it will suddenly, for the first time, unexpectedly flash into view, and not appear until then in spite of the most intense and penetrating gaze bent to the front. The motorist knew a line of railway was there, it is true, but so far as appearances went, the street seemed to be open and unobstructed. It is not a case of *failure or neglect to see that which was visible,* but of inability to see what was in fact an obstructed, but appeared to be an open, roadway. And this situation and appearance will arise under such circumstances notwithstanding the motor lights may be of the best, and shining brightly.

It is said that, even though permitting the cars to stand motionless on the crossing for thirty minutes next before the collision, is a violation of the Statute, section 4830, Revised Statutes 1929, and negligence *per se,* nevertheless this was not the proximate cause of the

collision and is, therefore, not actionable in this case. But who has the omniscience to say, either *ex cathedra* or from the curule chair, that the negligent leaving of the cars across the street for that length of time, unguarded and unmarked, *under the conditions here shown*, was not the proximate cause, or at least one of the proximate causes, of the collision? If the cars had been *moving* as plaintiff approached, the movement itself might have been sufficient to disclose their obstructing presence; and the fact that they remained silent and motionless for at least thirty minutes camouflaged by the mist, the uniformity of color, and the apparent innocence of the situation, together with the length of time conditions were thus allowed to deceptively remain, making it more easy and certain to entrap the luckless passing motorist, shows that it had a direct and causal effect in bringing the catastrophe about.

Where a railroad crossing is, on account of surrounding circumstances or conditions, especially dangerous, the company must exercise care *commensurate with the danger*. [Louisville, etc., R. Co. v. Gardner, Admr., 131 S. W. 787.] So also must the travelers using the crossing, but the deceptive appearances existing and the lack of knowledge that the cars were thus left, silent and motionless, obstructing the track and *unknown* to the motorist, would mislead and deceive him even though exercising increased care, thus making it imperatively necessary, (where in such a situation and for such a length of time, it was *almost certain* someone would come along and get hurt), that the defendant must use due care to obviate the danger. And this was the duty of the defendant no matter whether the statute prescribes another precaution or not. [2 White on Injuries to Persons on Railroads, sec. 877, p. 1297.] The degree of care required of railroads at public crossing depends upon the *facts and circumstances of each particular case*. [Fife v. Chicago, etc., R. Co., 174 Mo. App. 655, 661.] And section 4830, Revised Statutes 1929, was not intended to occupy the whole field of duty of railroads or to supersede or impair their common-law duty, to exercise reasonable care commensurate with the danger peculiar to a given public crossing. The degree of care required of railroads at public crossings depends on the facts and circumstances of each particular case. [Alewell v. East St. Louis & S. Ry. Co., 23 S. W. (2d) 869, 871.] And the peculiar facts and conditions were well known to the defendant and known *only* to it so far as the blocking of the crossing by the cars is concerned. Whether failure to maintain a warning at this crossing is negligence *depends upon all the surrounding circumstances*, and is for the jury to decide. [Toeneboehn v. St. Louis, etc., R. Co., 298 S. W. 795; Catner v. St. Louis, etc., R. Co., 220 Mo. 294, 311.] The case is somewhat similar in principle, though not precisely so in facts, to the cases of Leininger v. Harvey, 191 S. W. 240, and Kinney v. Metropolitan St. Ry. Co., 261 Mo. 97,

where the question of plaintiff's negligence was held to be for the jury.

We do not controvert for a moment the idea that if plaintiff drove his automobile in the dark on to the crossing *knowing that he could not see what, if anything, was there,* he would be guilty of contributory negligence as a matter of law. But the situation here is that, under the circumstances given, he drove his car into what appeared to be the open roadway at the crossing but which was in fact wrongfully and unlawfully obstructed by defendant without taking the least precaution to guard injury caused by such silent, noiseless and undiscernible obstruction. There is nothing shown in the petition to establish that plaintiff did any reckless or negligent thing to bring about or cause the collision, or that he neglected to do anything which would have prevented it. All that defendant can assert is that he did drive into the obstructing cars so close thereto that he could not avoid colliding with them. But that is not shown as a legal proposition but could only be determined from the evidence of the facts and circumstances, and they are determinable only by a jury.

In the cases cited by respondent holding a plaintiff guilty of contributory negligence as a matter of law, there were circumstances showing such negligence as a matter of law, *other than the mere fact of the collision.* For instance in Cleveland, etc., R. Co. v. Gillespie, 173 N. E. 708, the driver of the automobile traveled at such a rapid rate of speed that he could not stop within the distance that the train blocking crossing could be seen. Besides, in that case, the trainmen had no notice or knowledge that the automobile driver's vision would be blinded by the glare of a nearby bridge light, and, if such was the case, the driver with blinded vision knew it and due care required that he stop and not plunge blindly on. This case also holds (p. 712), that "even though under the common law there is no positive duty to maintain a watchman or gates at a highway crossing in the absence of an ordinance or order of the Public Service Commission or other proper authority, nevertheless it is the duty of the employes of the railroad company to exercise ordinary care in the operation of its trains, and failure to so exercise such care may constitute negligence."

In Solomon v. Duncan, 194 Mo. App. 518, cited by defendant, the automobile driver *could readily have seen* with his headlights, the obstruction at a sufficient distance away to enable him to avoid striking it, but was not looking forward and exercising due care to watch out for objects ahead of him. Hence he was, of course, guilty of contributory negligence as a matter of law. He was likewise guilty of such negligence barring his recovery where, on a wet and slippery pavement and at night, he drove so rapidly that, after seeing the obstruction, he could not stop in time.

The case of Osborn v. Wabash R. Co., 179 Mo. App. 245, is so different in its facts and has so many facts showing contributory negligence beyond the mere fact of collision, that it is not in point.

It is claimed by plaintiff that his petition also makes out a case under the humanitarian rule. We are not willing to extend either the petition or the rule that far. The facts stated in, and the necessary implications raised by, the petition do not present any different construction on the situation or any part thereof different from those raised in the charge of primary negligence, and the only legal effect of basing the case on the charge of a violation of the humanitarian rule would be merely to eliminate the effect of a possible showing of contributory negligence by a revelation of the facts. Plaintiff was not in actual danger nor in a dangerous situation long enough to give rise to the operation of that rule.

We think the petition stated a cause of action based on primary negligence and that the demurrer should have been overruled, and all the questions involved left to a jury. The judgment is therefore reversed and the cause remanded for a trial of the facts. It is so ordered. *Bland, J.*, concurs; *Arnold, J.*, absent.