## SISSON v. SOUTHERN RY. CO.
### No. 5831.

Court of Appeals of the District of Columbia.

Submitted Nov. 7, 1933.

Decided Dec. 4, 1933.

Dan F. Reynolds and Harrison Brand, Jr., both of Washington, D. C., for appellant.

George E. Hamilton, John J. Hamilton, George E. Hamilton, Jr., and Henry R. Gower, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

On the trial of this case at the conclusion of all the evidence the lower court directed a verdict for defendant. The action was brought to recover for personal injuries sustained by plaintiff when an automobile he was driving collided with a freight car, which, as a part of a standing train of defendant, was obstructing a public highway near the town of Manassas in Virginia.

The declaration charged that it was the duty of the railway "not to obstruct said public highway so as to prevent the free and safe passage of automobiles over said highway and across the said railroad tracks without giving due and proper warning of said obstruction to users of said highway, and that in the nighttime it was the duty of the [railway] to give warning of such obstruction to approaching travelers on said public highway by means of a light or lights, or other adequate and discernible signalling devices." And the failure to discharge this duty is alleged as follows: "The defendant [railway] did negligently and wilfully and completely obstruct said public highway, at the time and place and in the manner aforesaid, through its agents, servants and employees, by standing one of its freight cars for an unlawful period of time on the railroad tracks crossing said public highway, thus preventing the movement of traffic on said public highway, and did also negligently and wilfully fail * * * to display at said crossing any light or lights or other discernible signals of any kind whatsoever, as a warning to the plaintiff of said obstruction while approaching said railroad crossing on said public highway at the time and place aforesaid."

The evidence shows that plaintiff, who at the time of the injury was eighteen years of age, at about 9:30 o'clock in the evening, started out with his father's automobile for a short ride in the country. He was accompanied by three other boys, and drove out of Manassas until he came to a curve, at which time the automobile was being driven between 30 and 35 miles an hour. "He was rounding the curve, watching the road as any careful driver does. There were posts along the side which were painted white, and of course he was watching these posts so that he could be in the road and not run into the posts, and his lights were shining ahead of him, and on the curve they were shining around the curve off in the fields, and as he came out of the curve his lights showed him that the curve had ended," and as he "started to take his eyes off the posts * * * all at once in front of him loomed a freight car." He says he did what he could to stop the automobile, but in spite of his efforts there was a collision, the impact of which was so great that the hood of the automobile, though higher than the bottom of the freight car, went underneath the latter practically to the wind-

shield, and one of the boys in the rear seat was thrown through the door of the automobile and was found unconscious in the ditch on the side of the road. On cross-examination plaintiff testified that, after he straightened out at the end of the curve, he was about 80 feet from the crossing but he did not see the obstruction until he was within 40 feet of the standing car. The Virginia law requires headlights of automobiles to be so constructed as to render discernible a person 200 feet ahead. Code Va. 1930. § 2145 (52)

Other witnesses testified the straight road from the crossing to the curve in the direction from which plaintiff was approaching was between 85.75 feet and 110 feet, according to the manner of taking the measurements. The roadway was improved with macadam or concrete for a width of 18 feet. Plaintiff was approaching on the right-hand side of the road and to the outside of the curve, and, with his headlights burning, should have seen the box car on the crossing for a distance of at least 85 feet and probably for a much greater distance. He testified his car had four-wheel hydraulic brakes, and his father, who owned the car, testified that traveling at 30 to 35 miles an hour the car could be stopped in 75 to 80 feet. The uncontradicted evidence showed that the train had just left the Manassas yards and was stopped for considerably less than 5 minutes (as is lawful under the Virginia statute; Code Va. 1930, § 4734). The stoppage was to permit the caboose to be attached to the rear end of the train. One of the brakemen testified that, when the train pulled out of the side track onto the main line, he threw the switch that led into the "Y," and the flagman went over and took the brake off the cab (caboose) so that it followed right down and coupled to the train. As soon as this was accomplished, the witness coupled the air hose and gave the engineer the signal to proceed. All the witnesses agree that as soon as the train cleared the switch (the Y) the caboose followed almost immediately; that the coupling process required only a moment; and that the collision with the automobile occurred just as the train was in the act of starting. The uncontradicted evidence also is that there was the required cross-arm signal on both sides of the railroad track. There was also a disc signal with the letters "R. R." on it located some 300 feet from the crossing, but the evidence as to the then location of it is contradictory.

The position of the plaintiff on this appeal is that it was the duty of the railway company, while obstructing the highway in the nighttime, and in the exercise of reasonable care for the safety of persons using the highway, to give warning of the danger to automobilists using the highway by ringing a bell or displaying a light or blowing a whistle. If there was such a legal duty, then the action of the lower court in directing a verdict was wrong.

The question is narrow, and similar cases are abundant. Some of them are: Philadelphia & R. Ry. Co. v. Dillon (1921) 1 W. W. Harr. (Del.) 247, 114 A. 62, 15 A. L. R. 894; Gilman v. Central Vermont R. R. (1919) 93 Vt. 340, 107 A. 122, 16 A. L. R. 1102; Trask v. Boston & M. R. R., 219 Mass. 410, 106 N. E. 1022; Orton v. Pa. R. R. Co. (C. C. A.) 7 F.(2d) 36; Cleveland, etc., R. R. v. Gillespie (Ind. App.) 173 N. E. 708. The Court of Appeals of Virginia has many times held that a traveler on a highway and a railroad company crossing a highway are charged with the mutual duty of keeping careful lookout for danger. Each has the right of passage, and each is under a duty to observe the rights of the other. All of the Virginia decisions are in cases in which the injury was sustained as the result of collision with a moving train. See for example, Washington & O. D. R. Co. v. Zell, 118 Va. 755, 88 S. E. 309; Southern Ry. v. Cooper, 98 Va. 299, 36 S. E. 388; Marks v. Petersburg R. Co., 88 Va. 3, 13 S. E. 299. The present case, as defendant properly points out, involves a collision at a crossing, not on the crossing. All the cases, however, agree that the prior right of way is in the railway company in the operation of its trains, and that a pedestrian or a driver of an automobile observing an approaching train must give way until the train has passed. Southern Ry. Co. v. Bryant's Adm'r, 95 Va. 212, 28 S. E. 183.

In the case now under consideration, the railroad company had lawfully occupied the crossing. It had this right under the Virginia law for as much as 5 minutes. As a matter of fact, the train was stopped less than 3 minutes. In this respect the stopping and blocking were not unlawful, and this brings us to the other question, viz., whether, having blocked the highway in the nighttime, the railroad company was negligent in failing to warn travelers on the highway either by bell, whistle, or lights of the presence on the crossing of the freight car. We think, in view of conceded facts shown here, the question must be answered, "No."

The county road approaching the crossing was on a long curve until within approximate-

ly 100 feet. Thereafter it was straight and at right angles with the crossing. The road ran along and through the open country without other obstructions to the view than a few trees. The distance between the railroad tracks and the end of the curve was ample under ordinary circumstances to enable a person using the highway with reasonable care to observe the crossing and to stop his car. There is no evidence of other accidents at the crossing and nothing to put the railroad on notice the blocking of the highway was likely to cause an accident.

We think there can be no doubt of the correctness of the general proposition that a railroad company has the right to assume that a reasonably careful man driving at night in an automobile on a highway which he knows is crossed by a railroad will, in approaching such crossing, use such lights and adopt such rate of speed as to be able to stop his automobile in time to avoid hitting a box car standing on the crossing. The rule in that aspect is no different than it would be if the train were moving, and yet in the latter case it would hardly be contended by any one that the failure of the railroad to maintain a light at the crossing would be actionable negligence.

In the case we are considering plaintiff seeks to avoid the effect of this rule by showing that he was unfamiliar with the highway and did not know he was approaching a railroad crossing. He therefore says it was the duty of the defendant to give him warning of the danger. There is no statute law in Virginia requiring lights or gates or other safety devices at the crossing in question. There is, therefore, not alleged any failure of statutory duty. There may arise, however, cases in which, notwithstanding the lack of a statute requiring a railroad company to erect warning signs or lights, such a duty may arise out of its obligation not to use its right of way in such manner as will likely produce injury to pedestrians or automobilists using the highway with due care for their own safety. Such an obligation might arise out of an unusual condition brought about by the railroad company, as, for instance, damage to the crossing by a passing train, or, again, perhaps, if the physical conditions then existing with relation to the approach to the crossing were such that the exercise of due care on the part of the driver of an automobile would not of itself be sufficient to avoid the danger. In such a case the railroad company would be put on notice of its duty to provide other safeguards. Indeed, the Virginia law provides for just such a condition by giving the state corporation commission power to require lights, etc. Code Va. 1930, § 3985. On the contrary, however, if the physical conditions are such that there is no reason to anticipate injury to a person using the highway with due care, no obligation to warn arises.

Here, as we have seen, there was a bend in the road, which continued to a point approximately 85 feet from the track, measured on the inside of the curve, and considerably farther measured on the outside. This bend of the road, as plaintiff testified, while he was driving on it, deflected the headlights of his automobile from the road into the field beyond so that he could only see objects on the side of the road and not in front of the car in the direction in which he was traveling. In such circumstances as these, the railroad company had a right to anticipate that an automobilist unfamiliar with the road would slacken his speed and keep his automobile under control while his vision was obscured. The very condition on which plaintiff relies to justify his failure to see the obstruction in time to stop of itself imposed on him the duty of reducing speed and proceeding with caution. Equally the railroad company had a right to anticipate that this would be done. Obviously, if it had been done, the accident would not have occurred. In this view the failure to give warning by stationing a trainman along the roadside while the train was passing or by continuing to blow the whistle of the engine after it had passed the crossing was not actionable negligence.

Here, as in all cases in which a recovery is sought for personal injuries, the plaintiff cannot prevail unless he shows that the negligence of the defendant was the proximate cause of the injury. If there was no negligence, there can be no recovery, and in such a case the question whether the plaintiff was or was not negligent is of no consequence. What we have said, however, on the subject of the duty imposed on defendant in the circumstances indicates sufficiently our view that the lack of care on plaintiff's part in driving in the nighttime on a new and unfamiliar road at the rate of 35 miles an hour around a curve with his lights so focused that he could not see the road and with his whole attention fixed on the painted fence posts to avoid leaving it and going into the ditch, was an act of negligence which of itself would defeat a recovery. But we prefer to rest our affirmance

'upon the conclusion that the evidence shows no negligence on the part of the railroad, and the lower court was therefore correct in directing a verdict for defendant.

Affirmed with costs.

Cases Nos. 5827, 5828, 5829, and 5830 are affirmed on the ruling in No. 5831.