OPINION
We have carefully considered the arguments and authorities presented in appellants' petition for a rehearing, but are not persuaded that it should be granted.
It must be conceded that there are cases at variance with our opinion, but we cannot concur in the assertion that they represent the weight of authority. In the case of St. Louis-San Francisco R. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 217, 56 A.L.R. 1110, the court concedes a condition implying negligence, which, in our opinion, the circumstances of this case disclose. The court said: "In other words, the employees of the defendant,in the absence of some peculiar environment, are justified in believing that travelers in automobiles properly lighted and driving at reasonable speed will observe the cars upon the crossing in time to avoid coming into collision with them." (We have supplied the italics above.)
The same may be said of the case of Sisson v. Southern Ry. Co., 62 App. D.C. 356, 68 F.2d 403, 406, in which the court said: "Such an obligation [obligation not to use its right of way in such a manner as will likely cause injury to pedestrians or automobiles using that highway with due care for their own safety] might arise out of an unusual condition brought about by the railroad company, as, for instance, damage to the crossing by a passing train, or, again, perhaps, if the physical conditionsthen existing with relation to the approach to the crossing weresuch that the exercise of due care on the part of the driver ofan automobile would not of itself be sufficient to avoid thedanger. In such a case the railroad company would be put onnotice of its duty to provide other safeguards." (The italics are ours.)
The "peculiar environment" mentioned in the former, and the "physical conditions" stated in the latter, could *Page 213 
comprehend the surrounding conditions at the crossing on the morning of the accident. In St. Louis-San Francisco R. Co. v. Guthrie, supra, so much relied on by appellants and quoted from extensively in the petition for rehearing, it was held that the mere leaving of cars on a crossing, without lights or other signals to disclose their presence, was a condition which, in itself, furnished no cause of action. It is earnestly contended that such is the case here, and that the said decision represents the great weight of authority on the question involved. Let us see how the facts differ from the facts which we think constituted the peculiar environment in this case, and fully justified the trial court in concluding that the leaving of the gondola car on the crossing was an act of negligence, and the proximate cause of the death of Mrs. Lytle.
It cannot be gainsaid that black surfaces, such as oiled highways and black gondola cars, are light absorbents. These were two of the factors in the instant case contributing to the deceptive environment. In the Alabama case it does not appear that the highway, or cars across it, were dark. It does not appear that the approach to the crossing was in a cut with brown hills, or any hills, on either side of the highway, extending down a grade close to the crossing, as in the case before us. For aught that appears, the entire train may have been in view of an approaching motorist. So far as the opinion discloses, the highway may have been infrequently used, and this known to the trainmen; whereas, in the instant case, the highway was a transcontinental one used extensively by auto travelers, both day and night, and this known to the conductor. In the former case the crossing may not have been at all dangerous, while the evidence in the record here shows that the crossing was a dangerous one.
In the case cited it appears that the presence of the cars on the crossing was necessary, while the evidence in the record before us discloses that leaving the cars on the crossing was unnecessary. *Page 214 
We do not regard Sisson v. Southern Ry. Co., supra, as an authority in point. The facts are widely dissimilar to the facts under our consideration. The presence of the cars on the crossing there for a period of three minutes was necessary.
Nothing appears in the case to indicate that the crossing was dangerous, except a curve in the highway near it, which, of itself, was a warning to motorists to keep their cars under proper control. As the plaintiff rounded the curve, the automobile was being driven between 30 and 35 miles an hour. Plaintiff's father, who owned the car, testified that traveling at 30 to 35 miles an hour the car could be stopped in 75 or 80 feet. This was less than the distance from the crossing to the curve. The court said: "There was a bend in the road, which continued to a point approximately 85 feet from the track, measured on the inside of the curve, and considerably farther measured on the outside. This bend of the road, as plaintiff testified, while he was driving on it, deflected the headlights of his automobile from the road into the field beyond so that he could only see objects on the side of the road and not in front of the car in the direction in which he was traveling. In such circumstances as these, the railroad company had a right to anticipate that an automobilist unfamiliar with the road would slacken his speed and keep his automobile under control while his vision was obscured. The very condition on which plaintiff relies to justify his failure to see the obstruction in time to stop of itself imposed on him the duty of reducing speed and proceeding with caution. Equally the railroad company had a right to anticipate that this would be done. Obviously, if it had been done, the accident would not have occurred."
In the above case there was nothing to indicate that a man exercising ordinary vigilance could not have seen the car, or train, for that matter, on rounding the curve. In other words, it does not appear that the environment, like in the instant case, was such as to apprise the servants of the company that the obstruction was so obscured *Page 215 
that it would likely elude the vision of an automobilist exercising ordinary care. There is no analogy between the cases.
We are satisfied with our opinion on the question of defendants' negligence.
Now as to the alleged contributory negligence: It is stated in the brief of defendants that the majority of the court failed to give due consideration to some of the facts which are fully apparent. Just what facts having any bearing on this question which were not considered by us, the petition does not inform us, and we are aware of none. We studied the record with care and took into account all of the evidence which, in our opinion, had any probative force. From such consideration we reached the conclusion, which has not been changed by further thought and study, that it cannot be said as a matter of law that the driver was guilty of contributory negligence. We did not lose sight of the fact that it was testified to that the driver, shortly after the crash, was heard to say that he must have been asleep. The district court doubtless rejected that statement, and with reason. The injured man was desperately hurt; he was practically unconscious from the time of the crash until he was removed from the scene and taken to the hospital, or at least reduced to such a state, by suffering induced by pain and shock, that his mind was clouded. This condition was attested by witnesses. Statements made under such circumstances are of no value as evidence. Concerning a confession of carelessness by an injured person during the period of shock, this court said in Jones v. West End Consol. Min. Co., 36 Nev. 149, 154, 134 P. 104, 106: "That he said something to this effect is undisputed even by himself; he simply says that he has no recollection of it or any distinct recollection of anything else during a certain period just after his fall. That his remark was within the period of shock is admitted. * * * It meant nothing. It was the irrational talk of a man in a semiconscious condition, in agony, depending for help upon those about him." *Page 216 
So here, the injured man testified: "The first thing I remember after the accident was in one of the rooms of the hospital — they were working on me." He testified positively that he did not go to sleep, and there is no evidence in the record indicating that his faculties were not alert.
Defendants concede that leaving the gondola car on the crossing formed an unusual condition. In this regard it is said in the petition for a rehearing: "True, the road was oiled and the railroad had placed a car entirely across the highway, which, because of the surroundings, blended into the landscape." We have previously pointed out the other circumstances under which that act became an act of negligence and the proximate cause of the death of Mrs. Lytle. On the morning of the accident, in the light of all the circumstances, it would not occur to a reasonably prudent person, situated as the driver of the automobile was, that defendants would be likely to place a motionless, invisible obstruction across the highway, especially when such act was unnecessary to properly accomplish the switching of cars. To this extent at least, there was assurance in the thought that the crossing was clear. Due to the act of defendants it was seemingly clear, but really obstructed. This condition was not revealed to the driver until he was within about 20 feet of the crossing, when, as the evidence discloses, it was too late to avoid the fatal shock. It is insisted that if the driver had been proceeding with due caution he would have seen that the highway was blocked in time to stop. Other than what might be inferred from the fact that he was traveling at a speed of 25 to 30 miles an hour, there is no evidence tending to show that he was not observing due caution, or that he ought to have seen the obstruction before he did. The evidence shows that he was an experienced driver; that he was familiar with the crossing and the approach to it, having traveled over that part of the highway a number of times. He knew that the highway was straight from a distance *Page 217 
of about 1,200 feet from a point where he was approaching the crossing, to it. He knew, both from his own knowledge of the place and the signs at the side of the road when he was drawing near to the railroad and slowed down to 25 or 30 miles an hour. While he was driving down towards the crossing, he was looking straight ahead watching the road, and he knew that the lights of his automobile were sufficient to disclose an object 75 feet ahead of the lamps under normal conditions. But the evidence shows, as we have heretofore stated, that conditions were not normal. There is no testimony other than the driver's in the record as to his conduct immediately before the crash or when and after he entered the straight-of-way towards the crossing, or as to his inability to see the obstruction sooner than he did.
Defendants assert that the witness Lamond Laub, who, with his two brothers, arrived at the scene in an automobile from the direction in which the driver was traveling, immediately after the crash, testified that he could see the gondola car from a point about 150 feet away. We find no such unqualified testimony in the record. What he testified to was:
"Q. Well, didn't they tell you there was a train there? A. They said there was an awful wreck.
"Q. About how far? A. About 50 yards I should say.
"Q. And you could see the train from where you were, 50 yards back? A. After my attention was drawn to it.
"Q. And you could see it with the lights of your automobile? A. Yes."
He had previously testified as follows:
"Q. When you got to the straight road headed towards the crossing, you saw some lights down there, did you not? A. Yes, sir, seen the train crew.
"Q. And one of the lights at least was flagging you down? A. Yes, sir; there was one ahead of the other and the one flagged us down."
Under such circumstances, after his attention had been called to it, he could see the obstruction, but that *Page 218 
is no testimony at all tending to show that he could have seen it sooner than the driver did had he been situated as the former was. The driver would probably have seen the car sooner if there had been a train crew with lights to warn him of its presence.
On the evidence in this case bearing on the question of the driver's contributory negligence, we do not believe that rational and impartial minds would be impelled to reach a common conclusion of negligence. The question was, therefore, legally resolved against defendants' contention by the lower court.
Petition for rehearing should be denied.
It is so ordered.