## WM. A. SMITH CONST. CO., Inc., v. BRUMLEY.

### No. 1476.

Circuit Court of Appeals, Tenth Circuit.

March 15, 1937.

Hal C. Thurman, of Oklahoma City, Okl. (Harold C. Thurman, of Oklahoma City, Okl., on the brief), for appellant.

Richard W. Fowler, of Oklahoma City, Okl. (Tomerlin, Chandler & Shelton, of Oklahoma City, Okl., Turner M. King, of Ada, Okl., and John W. Swinford, of Oklahoma City, Okl., on the brief), for appellee.

Before PHILLIPS and BRATTON, Circuit Judges, and JOHNSON, District Judge.

PHILLIPS, Circuit Judge.

Brumley brought this action against the Construction Company to recover damages for personal injuries and for damage to his automobile resulting from a collision between the automobile and a work train of the Construction Company consisting of an engine, six empty flat cars next to the engine and five empty gondola cars at the rear, at a railway crossing on a branch line of the Atchison, Topeka & Santa Fé Railway Company near Ada, Oklahoma.

At the close of the evidence, the Construction Company moved the court to direct the jury to find a verdict in its favor. The motion was overruled and the jury returned a verdict in favor of Brumley for $3,000.00. Judgment was entered thereon and the Construction Company has appealed.

Brumley, in his petition, alleged that "at the time of this accident the rays of light from the rear headlight of said engine shone west across the highway over the tops of the flat cars unobstructed; that the rays of light deflected from the tops of said flat cars to the ground on either side thereof and prevented Brumley from seeing said flat cars by the lights of his own automobile; that Brumley could see to the north beyond the point where the flat cars were across the road and by reason of the rays from the rear headlight of said engine said flat cars were invisible to him, and deceived him into believing that the road was open and unobstructed ahead of him which caused him to strike said flat cars without slackening or slowing his speed," and that the employees of the Construction Company negligently proceeded across the crossing with the train without ringing the bell, blowing the whistle, or giving any other signal.

The branch line extended from Ada Junction, Oklahoma, to Lehigh, Oklahoma, a distance of forty and one-half miles. On January 28, 1934, with the permission of the Interstate Commerce Commission granted December 21, 1933, and after advertising in the Ada Weekly News its intention so to do, the Railway Company ceased the operation of trains on such line.

Seven and three-quarters miles southeast of Ada Junction, this line running from the northwest to the southeast, crossed at an angle of about 45 degrees, state highway number 48, running north and south. The highway was 100 feet wide and was level for more than a mile both north and south of the railroad crossing. It was paved with a mixture of oil and gravel. The paved portion was about 40 feet in width. The rails were slightly below the level of the highway. On the south side of the crossing there were the usual railroad and highway warning signs.

On April 10, 1934, Brumley, then 32 years of age, commenced working in the Fitts Oil Field 13 miles southeast of Ada. He resided in Ada. He left Ada for his work about 3 o'clock p. m. and left his work to return home about midnight. He passed over the railroad crossing at least twice daily from April 10, 1934, up to the time of the accident, which occurred about 12:30 a. m., June 24, 1934. About May 1, 1934, the Construction Company commenced the work of salvaging for the Railway Company the materials in the track,

bridges, and other right of way equipment on the line and in so doing, daily picked up at Ada Junction empty railroad cars furnished by the Railway Company, moved them over the line southeast toward Lehigh to points where the salvaging work was being done, there loaded the materials on the cars and returned them to the Railway Company at Ada Junction, using a Plymouth gasoline railway engine as motive power. The engine was a regular thirty-ton gasoline engine designed for use on standard railroad tracks with standard locomotive headlights both front and rear, positioned about 12 feet above the ground and equipped with 50 candle power electric lights and reflectors 11 or 12 inches in diameter. These headlights threw a beam of light from 1000 to 2000 feet sufficiently strong to disclose the presence of a small object that distance away. The light therefrom could be seen from a point on the highway 700 feet south of the crossing. The beam was 30 to 40 feet wide at a distance of 100 feet from the engine. The cab of the engine was equipped with a 32 candle power electric light which threw light outside the cab windows.

Three men, a conductor, an engineer, and an oiler constituted the ordinary crew for the operation of the train which consisted of 10 or 12 cars. During the salvaging work a train of loaded cars crossed highway 48 on the way to Ada Junction between 6 and 7 o'clock in the afternoon of each day and returned with a train of empty cars, reaching the crossing between 9 p. m. and 2 a. m. each night. About once or twice a week, the train made a day time trip to Ada Junction for supplies.

There was a siding or passing track which connected with the main line at a point a short distance east of the highway. For approximately two weeks prior to the accident the Construction Company had maintained its camp at this siding. The camp consisted of 5 or 6 bunk cars, a kitchen car and dining room car.

At the time of the accident approximately 32 miles of the line had been salvaged and the work was progressing at a point about a mile southeast of the crossing. The Construction Company's train crew had delivered the train of loaded cars at Ada Junction and was returning to the passing track with the engine pulling the flat cars and gondola cars. The flat cars were the ordinary railroad steel frame cars approxi-

mately 40 feet long. The initials of the Railway Company, the car numbers and other letters and figures were painted in white on the sides of the cars.

The train stopped at the west edge of the highway to permit some automobiles to pass over the crossing. The conductor, lantern in hand, walked across the highway to the switch stand, opened the switch, and signaled the engineer to come ahead. The brakeman or oiler with his lantern was on the front end of the first flat car behind the engine, in position to uncouple the engine as it approached the switch, it being the intention of the train crew to let the engine run in on the siding and the empty cars to pass by on the main track so that such cars could be pushed ahead of the engine down to the point where the salvaged materials were to be loaded. The engineer was in his station in the cab of the engine. Both headlights were on. The rear headlights lighted up the tops of the flat cars and the right of way on both sides of the track. On receipt of the signal the engineer proceeded to move over the crossing without ringing the bell or blowing the whistle. The train was moving at a speed of 3 to 5 miles an hour.

Brumley, having finished his night's work, had started home about midnight in his automobile, accompanied by his wife. As the train started across the highway both the engineer and oiler saw the Brumley automobile a distance which they estimated to be at least a mile south of the crossing. The oiler was too far east of the crossing to flag the automobile as it approached the crossing. The engineer did not see the Brumley automobile after he first noted it until it was about 20 or 25 feet south of the crossing, whereupon he immediately set the brakes and the train did not move more than 2 or 3 feet after the collision. The automobile collided with the rear end of the second car and front end of the third car back of the engine.

Brumley testified that the lights and brakes on his automobile were in good condition; that the headlights threw a beam a distance of 300 feet; that he knew that the railroad tracks crossed the highway, and the railroad had been abandoned; that he had not seen any train on the track and did not know the track was being taken up or was being used by a work train. He further testified as follows:

"The rails were concealed by gravel. On the day of the accident he went to work in a car of an acquaintance and quit work about 11:45 p. m., Saturday night. His wife drove his car out to the oil field and brought supper, which they ate together, and they started home, Mr. Brumley driving. It was clear, fairly light night. The moon was shining or had been earlier. The distance from where the railroad crosses highway 48 and the hill where one could see is one mile and two-tenths. He was driving from 32 to 35 miles per hour as he approached the crossing. When 200 yards south of the crossing he saw a light to the east and his right shining across the highway and thought it was an automobile, truck, or something, and would glance from the road to the light, but didn't see anything across the highway and the next he knew the accident had occurred. He knew that there was no highway nor farm gate coming into Highway No. 48 in the vicinity of the railroad crossing. He did not see railroad cars crossing the highway either before or at the time he ran into them and didn't know what he had hit. He was keeping a watchout and didn't put on his brakes or slow down before the accident. He saw no obstruction whatever on the highway. The light shining across the highway did not reveal any obstruction standing on the highway and nothing obstructed the rays going across the highway. He thought he had only to go through the rays from the light. He pulled just a little to the center of the road. He had never been informed that the track was being used by an engine with a rear headlight. Did not know that there was anything in front of that light in the way of cars or obstruction. He did not observe the other light on the engine. The light he saw did not appear to be moving. * * * At the time of the accident he could see north on the highway beyond the tracks and could see the horizon beyond. * * * There was a railroad crossing sign south of the tracks, and a highway railroad sign still further south at the time of the accident. He knew before the accident that these signs were there and on the night of the accident, with the aid of his headlights, he could see them as he was driving toward the crossing."

An automobile mechanic called as a witness for Brumley, testified that the lights on the latter's automobile would show objects 100 yards away and that the automobile proceeding at a speed of 35 miles per hour could be stopped within 30 or 40 feet

after application of the brakes. Making allowance for the time it would take the operator's mental process to function and to make the physical application of the brakes, he estimated that the car could be stopped between 75 and 80 feet.

■ Under the ordinary conditions a train upon or passing over a crossing is itself adequate notice to a traveler approaching the crossing, of the obstruction thereof and it is not incumbent on the railway company to give any additional warning of the danger.[1]

■ The reason for the rule is that those in charge of the train, in the absence of some unusual environment, are justified in believing the driver of an automobile equipped with proper lights and brakes, will approach the crossing at a reasonable speed and will be able to observe the train upon the crossing and stop in time to avoid a collision therewith.[2]

Had the proof established that the rays of light from the engine headlights so affected the rays of light from the automobile headlights that Brumley could not see the obstruction by means of his automobile headlights and that the employees of the Construction Company, in the exercise of reasonable care, should have anticipated that fact, then the case would have been taken without the general rule.[3]

The line of rays from the headlight of the engine was toward the northwest, crossing the highway at about an angle of 45 degrees. Brumley was traveling toward the north. He was not facing the rays of light from the engine headlight and hence was not blinded thereby. Not being directed toward the sides of the flat cars, but over the tops thereof, the rays of light from the engine headlight did not light up the sides of the flat cars. The rays of light from the engine headlight which struck the south side of the right of way were the weaker rays. The strongest rays of light from Brumley's headlights shown directly on the sides of the flat cars. The flat cars came within the rays of the light of Brumley's automobile when he reached a point 300 feet south thereof. Their visibleness naturally increased as he came closer to them. There was no proof, technical or otherwise, that the cross rays of the engine headlight affected the rays of light from the automobile headlights or prevented Brumley from seeing the cars by means of his automobile headlights.

Brumley did not even testify that after the crossing came within the range of his automobile headlights, he ever looked at the road where the rails crossed the highway or at the point of the obstruction and that he was unable to see the obstruction by means of his own headlights. He simply said he did not see it. He may not have seen the obstruction for other reasons. He may have been giving attention to the object throwing its lights across the highway.

[1] Jones v. Atchison, T. & S. F. Ry. Co., 129 Kan. 314, 282 P. 593, 594; Mabray v. Union Pac. R. Co. (D.C.Colo.) 5 F. Supp. 397, 400; Crosby v. Great Northern Ry. Co., 187 Minn. 263, 245 N.W. 31, 32; Schmidt v. Chicago & N. W. Ry. Co., 191 Wis. 184, 210 N.W. 370; Ausen v. Minneapolis, St. P. & S. S. M. Ry. Co., 193 Minn. 316, 258 N.W. 511, 513; Gallagher v. Montpelier & Wells River R. R., 100 Vt. 299, 137 A. 207, 210, 52 A.L.R. 744; Witherly v. Bangor & A. R. Co., 131 Me. 4, 158 A. 362, 363; Yardley v. Rutland R. Co., 103 Vt. 182, 153 A. 195, 198; Nadasky v. Public Service R. Co., 97 N.J.Law, 400, 117 A. 478, 479; Pennsylvania R. Co. v. Huss, 96 Ind.App. 71, 180 N.E. 919, 921; Texas & N. O. R. Co. v. Stratton (Tex.Civ.App.) 74 S.W.(2d) 741, 745; Scott v. Delaware, L. & W. R. Co., 222 App.Div. 409, 226 N.Y.S. 287, 291.

[2] St. Louis-San Francisco R. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 217, 56 A.L.R. 1110; Gulf, M. & N. R. Co. v. Holifield, 152 Miss. 674, 120 So. 750, 751; Trask v. Boston & M. R. R., 219 Mass. 410, 106 N.E. 1022; Sisson v. Southern Ry. Co., 62 App.D.C. 356, 68 F.(2d) 403, 406; Bowers v. Great Northern Ry. Co., 65 N.D. 384, 259 N.W. 99, 103, 99 A.L.R. 1443; Gilman v. Central Vermont Ry. Co., 93 Vt. 340, 107 A. 122, 125, 16 A.L.R. 1102; Southern R. Co. v. Lambert, 230 Ala. 162, 160 So. 262, 263.

[3] Elliott v. Missouri Pac. R. Co., 227 Mo.App. 225, 52 S.W.(2d) 448, 451, 452; Los Angeles & Salt Lake R. Co. v. Lytle, 56 Nev. 192, 47 P.(2d) 934, 937, 52 P.(2d) 464; Jarvella v. Northern Pac. Ry. Co., 101 Mont. 102, 53 P.(2d) 446, 449. See, also, Sisson v. Southern Ry. Co., 62 App.D.C. 356, 68 F.(2d) 403, 406; Richard v. Maine Central R. Co., 132 Me. 197, 168 A. 811, 812; Trask v. Boston & M. R. R., 219 Mass. 410, 106 N.E. 1022, 1024; Gage v. Boston & Maine R. R., 77 N.H. 289, 90 A. 855, L.R.A.1915A, 363; Philadelphia & R. R. Co. v. Dillon, 1 W.W.Harr.(31 Del.) 247, 114 A. 62, 65, 15 A.L.R. 894; Gallagher v. Montpelier & Wells River R. R., 100 Vt. 299, 137 A. 207, 209, 210, 52 A.L.R. 744; Crosby v. Great Northern Ry. Co., 187 Minn. 263, 245 N.W. 31, 32.

Brumley's omission to so testify is significant because he did testify he observed the highway beyond the crossing to the north and could not see the obstruction by means of the engine headlights.

The candle power of the engine headlight was known. The approximate candle power of the automobile headlights could have been ascertained and the distances could have been established with reasonable accuracy. Surely the effect of the cross rays of the engine headlights on the rays of light from the automobile headlights under the existing conditions could have been established by the technical evidence of light engineers. Such proof, we think, should have been adduced. The effect of such cross rays is not a matter of common knowledge, nor one of which we can take judicial notice.

Brumley pleaded that the cross rays of the engine headlights prevented him from seeing the obstruction by means of his automobile headlights; the answer denied that fact; the burden was on Brumley to establish it. We think he failed so to do and to establish a material allegation of his petition.

The judgment is therefore reversed with instructions to grant the Construction Company a new trial.

Reversed.