**Raymond G. CAHILL, Plaintiff-Appellee,**

v.

**The NEW YORK, NEW HAVEN & HART-FORD RAILROAD COMPANY, Defendant-Appellant.**

**No. 329, Docket 23559.**

United States Court of Appeals Second Circuit.

Argued May 11, 1955.

Decided July 8, 1955.

Frank, Circuit Judge, dissented.

Edward R. Brumley, New York City, John G. Pare, New York City, and Thomas P. Hackett, Cheshire, Conn., of counsel, for appellant.

Randolph J. Seifert, New York City, William A. Blank, Brooklyn, N. Y., and Harry Kalman, New York City, of counsel, for appellee.

Before HAND, SWAN and FRANK, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal from a judgment for the plaintiff in the amount of $90,000 in an action brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., tried to a jury. The court denied motions to direct a verdict, and to set aside the verdict and enter judgment for the defendant, or, in the alternative, to grant a new trial. The contentions on appeal are (1) that there was no evidence of negligence on the part of the defendant which contributed to the plaintiff's injuries, and (2) that the court erred in admitting evidence of other accidents at or near the place of the accident in suit. In our view the first point is decisive; hence the second need not be considered.

The accident happened: on a public highway in New Haven, Connecticut, known both as Forbes Avenue and U. S. Route 1. The highway runs substantially east and west. Use of it by motor vehicles, both passenger automobiles and trucks, is heavy. In the highway is a double line of railroad tracks which lead from the defendant's Belle Dock freight yard, located north of Forbes Avenue and West of Tomlinson Bridge, into the highway and continue easterly over the bridge and along Forbes Avenue to Waterfront Street, where a single track crosses the southerly side of Forbes Avenue at right angles into Waterfront Street. When a switch engine or train of freight cars is using the tracks it is necessary to stop the motor vehicle traffic near the junction of Forbes Avenue and Waterfront Street. On the day of his accident, June 5, 1953, the plaintiff, a brakeman in the employ of the railroad was assigned to flag eastbound motor traffic at this junction. He had never done such work before, and he was told by the Belle Dock yardmaster: "Well, be careful, and don't worry about anything. The conductor will tell you on your way over what to do." He left the yard on a switch engine, which stopped about 100 feet from Waterfront Street and the conductor then told him to get off and stop the eastbound motor traffic with a red flag. He did so without incident while the switch engine turned south into Waterfront Street. About forty-five minutes later he observed the switch engine returning with a string of freight cars loaded with coke. He again flagged the eastbound motor traffic until the train turned from Waterfront Street into the track on the northerly side of Forbes Avenue and proceeded westerly past the point where he was standing. This ended plaintiff's duty to stop the eastbound traffic and he started to walk back toward the south side of the highway. There is an upgrade over Tomlinson Bridge. This caused the freight train to come to a sudden stop. The westbound motor vehicles which were following the train also stopped. Fearing that the slack in the couplings would cause the rear car to slide back into a stopped truck close behind it, the plaintiff hurried across the highway intending to turn an anglecock which would effect an emergency stop and prevent the train from rolling back. Brakeman Wells turned the anglecock just before the plaintiff reached it. As he started to leave, Wells, who was senior in authority to plaintiff, told him to come back and stay there and hold the green truck which had stopped within five or six feet of the stationary rear car and directly behind it. Wells then began to get the motor traffic moving along the north side of the train, and the plaintiff with his read flag in his hand took up a position between the rear car and the green truck. He was about two feet from the car and three or four feet in front of the truck. When a trailer truck moved past the north side of the car, with close clearance, the plaintiff · peeked around the side of the car to see whether the trailer could clear. As he turned back toward the stationary green truck, this truck suddenly and without warning started up and struck the plaintiff, throwing him against the projecting coupling of the stationary rear car. The blow resulted in serious injury to his spine.

Several charges of negligence on the part of the railroad were asserted in the complaint, namely, (1) failure to provide plaintiff with a safe place to work; (2) failure to instruct and prepare plaintiff for the work he was assigned to do; (3) improperly directing him to work in an unsafe place with knowledge that such place was unsafe; and (4) failure properly to supervise the work in that the defendant did not prescribe proper methods of procedures, rules and regulations to cover the work in question, and (5) otherwise negligent conduct toward the plaintiff.

 The duty to provide a railroad employee with a safe place to work is not an absolute duty; if it were the employer would be an insurer of the employee's safety and negligence would be irrelevant. Under the Federal Employer's Liability Act, the employer's duty is the

same as that imposed by the common law, namely, to use reasonable care in furnishing his employees with a safe place to work.[1] All work on a railroad involves some danger, but it has to be done and the dangers involved do not involve liability provided the railroad takes all practicable precautions consistent with the conduct of the business. When the freight train came to a sudden stop on Forbes Avenue it was necessary to place a flagman to control the motor vehicles which had been following behind the train. Cahill's position directly behind the stationary train and directly in front of the stationary truck would appear to be the safest position he could occupy while performing his duty as a flagman. He does not suggest that Wells was at fault in placing him there. Obviously the risk of being struck when the traffic began to pass the train would have been greater had he stood at either side of the rear car. The evidence furnishes no support for the charge of negligence based on failure to provide him with a safe place to work.

Other charges of negligence assert a failure properly to instruct Cahill or supervise his work. It is true he was inexperienced as a flagman, and he was given no specific instructions other than brakeman Wells' direction to "stay there and hold that truck there." But we cannot conceive what instructions or supervision could have been given that would have protected him against an accident of the kind that happened. An experienced flagman would have incurred no less risk than a novice from the sudden starting forward of a stationary truck five feet behind the stationary train. But even if it be assumed arguendo that he should have been warned to be especially vigilant and there was a breach of duty in this respect, it cannot be said that his injury resulted from such omission. The sole cause of his injury was the negligence of the truck driver. It is true that in the "but for" sense of causation the stalling of the train and the direction to Cahill to flag the traffic did contribute, for the accident could not have happened if those conditions had not existed. But neither condition was a cause in the legal sense.[2] It was certainly not to be anticipated that a stationary truck only three or four feet away would start up without warning and pin him against the stationary rear car. As the Supreme Court said in Brady v. Southern Ry. Co., 320 U.S. 476, at page 483, 64 S.Ct. 232, at page 236, 88 L.Ed. 239: "Events too remote to require reasonable prevision need not be anticipated." And again in 320 U.S. at page 484, 64 S.Ct. at page 236: "The carrier's negligence must be a link in an unbroken chain of reasonably foreseeable events."

In the case at bar, as in the Brady case, we think that the evidence is such that a verdict for the defendant is the only reasonable conclusion. The trial court erred in not granting the motions to direct a verdict and to enter judgment non obstante veredicto.

Judgment reversed.

FRANK, Circuit Judge (dissenting).

The plaintiff testified as follows: He had been "peeking around" the side of the last railroad car to see whether the moving trailer truck could clear the car. It was just as he turned back to face the other truck that he "was struck." That truck, before it went into motion, was "three or four feet" from plaintiff. The jury could reasonably take the distance as four feet.

I think that the jury could reasonably infer (1) that, had defendant properly instructed plaintiff, he would have been so warned that, in the circumstances, he would not have "peeked around" at the moving trailer truck, but would have remained face-to-face with the other truck, and (2) that, had he done so, plaintiff, an

1. Bailey v. Central Vermont Ry., 319 U.S. 350, 352, 63 S.Ct. 1062, 87 L.Ed. 1444.

2. See Orton v. Pennsylvania R. Co., 6 Cir., 7 F.2d 36; Sisson v. Southern Ry. Co., 62 App.D.C. 356, 68 F.2d 403; Chicago, M., St. P. & P. R. Co. v. Slowik, 8 Cir., 184 F.2d 920; Chesapeake & Ohio Railway Co. v. Burton, 4 Cir., 217 F.2d 471.

able-bodied man aged 21, could and would have jumped out of harm's way.

My colleagues' opinion seems to me to amount to saying that, as a matter of judicial notice, such a man could not have jumped to safety when a truck, which had been stationary, four feet away, started in motion. With that position I do not agree. A truck cannot leap forward from rest like a greyhound or a modern sport-model passenger automobile. I think that we cannot hold that a jury acted unreasonably in believing that an agile young man could have rescued himself, had he been looking directly at the truck when it began to move towards him.

Nor do I agree that defendant must be exculpated because the truck driver's conduct was criminally negligent or reckless. Since such drivers are part of the facts of life, as police records demonstrate, defendant owed plaintiff a duty to train him to take such behavior into account. Such an "intervening" factor does not exculpate in such circumstances.[1]

I assume, arguendo, that the inference needed to support the verdict would not suffice in a suit not brought under the Federal Employees Liability Act. But the more recent Supreme Court decisions make it clear that, under that Act, the jury's power to draw inferences is greater than in common-law actions. It is significant that the latest Supreme Court decisions, involving that statute, which my colleagues cite, are Bailey v. Central Vermont Railway, 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444, and Brady v. Southern Railway Co., 1943, 320 U.S. 476, 64 S.Ct. 232, 88 L.Ed. 239. They neglect the following later decisions in which the Court, as is generally recognized, adopted a new attitude in F.E.L.A. cases: Lavender v. Kurn, 1946, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Jesionowski v. Boston & Maine R., 1947, 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416; Ellis v. Union Pacific

R. Co., 1947, 329 U.S. 649, 67 S.Ct. 598, 91 L.Ed. 572; Lillie v. Thompson, 1947, 332 U.S. 459, 68 S.Ct. 140, 92 L.Ed. 73; Johnson v. United States, 1948, 333 U.S. 46, 68 S.Ct. 391, 92 L.Ed. 468; Wilkerson v. McCarthy, 1949, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Affolder v. New York, C. & St. L. R. Co., 1950, 339 U.S. 96, 70 S.Ct. 509, 94 L.Ed. 683; Stone v. New York, C. & St. L. R. Co., 1953, 344 U.S. 407, 73 S.Ct. 358, 97 L.Ed. 441; Smalls v. Atlantic Coast Line R. Co., 1955, 348 U.S. 946, 75 S.Ct. 439, reversing 4 Cir., 216 F.2d 842.

My colleagues have also overlooked our decision in Palum v. Lehigh Valley R. Co., 2 Cir., 165 F.2d 3, 5–6, where, in a suit under the same Act, we said (per Judge A. N. Hand): "It is possible that in former times it would not have been regarded as negligent to embark firemen upon such a service as that to which the plaintiff was assigned but, under the recent rulings of the Supreme Court, we cannot say that it was beyond reason for a jury to find that it was negligent to send the plaintiff on an unfamiliar route when firemen who were familiar with that route could apparently have been obtained without great difficulty. It would certainly have been safer to send a fireman over the route who was familiar with it and there was evidence indicating that this safer method, if not invariably practised, was generally employed. In such circumstances we think it was required by the recent decisions of the Supreme Court to leave to the jury the question of whether that safer method should not have been chosen.[2] * * * The jury evidently thought that there ought to have been greater care exercised in selecting the crew and that if Palum had not been sent over a route when he was unfamiliar with the dangers he might encounter he would not have been injured. We cannot say that such a view was without any substantial justification, and if not it was beyond judicial control however doubtful might be its wisdom."

---

1. See Restatement of Torts, Section 290 (a) and Comment b; Section 302(b) and Comments c, i and j; Section 447(a) and (b), Sections 448 and 449.

2. Here Judge Hand cited many of the Supreme Court decisions I have cited above.

And see Korte v. New York, N. H. & H. R. Co., 2 Cir., 191 F.2d 86, 88, and Ruddy v. New York Central R. Co., 2 Cir., 224 F.2d 96, where we recognized that the Supreme Court had widened the permissible scope of jury inferences in F.E.L.A. litigation. See also Louisville & N. R. Co. v. Botts, 8 Cir., 173 F.2d 164, 166.