The liability of a railroad company for injury resulting from the collision of a road vehicle with a car or train standing on a highway crossing is generally predicated upon negligence. St. Louis, etc. R. Co. v. Guthrie (Ala.), 114 So. 215; 56 A.L.R. 1110. The only finding of fact upon which plaintiff in this case could predicate negligence is that the defendants did not use the measure of care and diligence required of a railroad company under the circumstances. Even though this finding is too general and does not specify wherein the defendants failed to use the required measure of care and diligence, and notwithstanding the court overruled defendants' objection and exception thereto, there is no evidence whatsoever to show that any peculiar circumstances or environment existed at the time of the accident which the defendants' duty required them to guard against. There is not one scintilla of evidence that the train crew knew or had reason to believe that the driver of an automobile, properly equipped with brakes and lights, traveling along the highway in question at a reasonable rate of speed with such care as an ordinary reasonable man would use, could not observe the gondola car across the highway in time to avoid colliding with it. But, on the contrary, the crew knew that the road was straight for over 1,200 feet, was protected by signs warning of the existence of the railroad; that on many other occasions automobiles had stopped while the crossing was blocked by gondola cars. The burden is on plaintiff to show such peculiar environment as to charge defendants with a duty to provide a warning of the standing train on the crossing, and such duty cannot be left to mere conjecture. St. Louis, etc. R. Co. v. Guthrie, supra.
There was no allegation, finding or proof that the car *Page 194 
could not have been seen with the aid of ordinary automobile lights a sufficient distance to stop before running into it. But, on the contrary, the testimony of Lamond Laub shows that the car could be seen a distance of fifty yards with the lights of the automobile he was driving, and those lights were not very good.
The hazard created by the cut and the embankments was of approaching trains, not trains standing on the crossing. A railroad train on a crossing is itself a notice of its presence. Gallagher v. Montpelier, etc. R.R. Co. (Vt.), 137 A. 207,52 A.L.R. 744; Witherby v. Bangor Ry. (Me.), 158 A. 362; 52 C.J., p. 190, sec. 1782.
It is not negligence in itself for a railroad company to allow a train of cars to stand on a highway crossing. Crosby v. Great Northern (Minn.), 245 N.W. 31; Gulf Ry. v. Holifield (Miss.),120 So. 750; Plummer v. Gulf, etc. Ry. (La.), 153 So. 322; Jones v. Texas P. Ry. Co. (La.), 154 So. 768; Huddy Cyclopedia of Automobile Law (9th ed.), vol. 7-8, p. 129.
John M. Lytle, Jr., was guilty of negligence. We maintain that the action of a driver of an automobile who approaches a railroad crossing which, on account of natural obstructions known to him to exist, is as hazardous as the one here in question was found to be, and where his view along the tracks is obscured until he reaches a point from ten to forty feet from the track, at a speed of twenty-five to thirty miles per hour, is not the action of an ordinary prudent man who has any regard for his own safety, and the court should so hold, as a matter of law. The law requires that railroad crossings be approached with caution, and that greater care must be exercised when darkness obscures the vision. 22 R.C.L. 1018, sec. 250.
A motorist who runs into a railroad train blocking highway crossing is guilty of negligence as a matter of law. Mailhot v. N Y, N.H., etc. Ry. Co. (Mass.), 173 N.E. 422; Rape v. Tennessee, etc. R. Co. (Ga.), 174 S.E. 551; Newsom v. Illinois Central Ry. Co. (La.), 122 So. 874. *Page 195 
Where an automobile driver could not stop after his lights made visible a train blocking the crossing, the blocking of the crossing is not the cause of the injury, but is at most a condition. The lapse of time a train is on a crossing is merely a condition in which the accident occurred, and not the cause thereof. Orton v. Pennsylvania Ry. Co., 7 F.2d 36; Rowe v. Northern Pacific R. Co. (Ida.), 17 P.2d 352; Cleveland Ry. v. Gillespie (Ind.), 173 N.E. 708; Pennsylvania Ry. v. Huss (Ind.),180 N.E. 919; St. Louis Ry. v. Guthrie, supra; Brinson v. Davis (Ga.), 122 S.E. 643; Newsom v. Illinois, etc. R. Co. (La.),122 So. 874.
We therefore respectfully submit that the plaintiff failed to prove actionable negligence on the part of the defendants; that the negligence of John M. Lytle, Jr., was the proximate cause of the injuries complained of, and, consequently, that the plaintiff is not entitled to recover.
For a railroad to obstruct a crossing unnecessarily or for an unreasonable length of time is negligence. It was proven in this case that the crossing was obstructed by the defendants, unnecessarily, for about four minutes, under conditions of great hazard then and there existing, known, or which, by the exercise of the care of an ordinarily careful, prudent person, should have been known, to the employees in charge of the train, and that solely by reason thereof the deceased received the injuries from which she died on the 12th day of February, 1932. This constituted actionable negligence on the part of the defendants. 22 R.C.L. p. 994; Denton v. Missouri, Kansas Texas Railway Co. (Kans.), 47 L.R.A. (N.S.), p. 820, 33 Cyc. p. 931; 52 C.J. 179, 180, 181, 211, 212; Chicago N.W. Ry. Co. v. Prescott, 59 Fed. 237; Miller v. Atlantic Coastline R. Co. (S.C.), 138 S.E. 675; Central of Georgia Ry. Co. v. Owen (Ga.), 48 S.E. 916; Freeman v. Terry (Tex.), 144 S.W. 1016. *Page 196 
In the case at bar, by the exercise of a little more care by the trainmen the crossing could have been left open all of the period of five minutes the train was at the siding, except probably for a few seconds, and not exceeding one minute, and Vilate Lytle would not have been injured. It is certain that, if the train had been stopped east of the crossing, the engine and tender would have been uncoupled and proceeded over the crossing (which latter required only about three seconds) during the first minute of the five minutes that the train was there prior to the Lytles reaching the crossing. And we have the right to assume that the trainmen would have consumed as long a time in their switching operations, if the train had been broken and part of it left east of the crossing, as they did when stopped upon the crossing; therefore, they would not, in fact, have started backing over the crossing to connect with the remainder of the train until after the Lytles had reached the crossing, and the crossing would have been clear and the collision avoided.
Clearly the defendants, under the extra hazardous conditions at the crossing, when same was unnecessarily obstructed by the black gondola car, owed the duty of warning travelers, either by a light or lights placed upon the car, or by having a trainman swing a lantern where same could be seen by travelers upon the highway. Miller v. Atlantic Coastline R. Co. (S.C.), 138 S.E. 675
(supra).
John M. Lytle, Jr., was not guilty of negligence. He had the right, under the law, in regulating the speed of his automobile, to place reliance upon the railroad company performing its duty in the premises, and, therefore, had the right to believe that there would be no train standing upon the crossing unnecessarily, without lights, on that dark night, under the conditions of hazard which the trainmen have admitted that they knew existed. He observed carefully, in ample time to have stopped, before reaching the crossing, traveling at not to exceed thirty miles per hour, *Page 197 
and not seeing or hearing any evidences of a moving train, and seeing no light or lights of any train standing upon the crossing, or a trainman with a lantern warning of its presence, he had the right to approach the crossing at a speed of twenty-five to thirty miles an hour, which speed, under modern conditions of travel, is very moderate, and such as is usually traveled by ordinarily careful, prudent persons under like circumstances.
The negligence of the defendants was the proximate cause of the collision and of the injuries and death of Vilate Lytle. Taking into consideration the fact that the crossing was so infrequently used by the railroad, and so seldom occupied by standing cars, and the further fact that they had unnecessarily left, without lights, the black gondola car in the darkness of the night, under the surrounding conditions of extra-ordinary hazard, the trainmen might reasonably have foreseen or anticipated that a traveler in an automobile, traveling as Lytle, Jr., was traveling, would travel along the highway without anticipating the presence of the gondola car there, that he would be traveling at a usual or ordinary rate of speed, and that, the gondola car being black, and the other surrounding objects dark or black in color, and the road wet, the lights of his automobile would not reveal the presence of the gondola car and enable him to distinguish same from the other black or dark objects in time to enable him to avoid coming into collision with same. Therefore, under the definition of "efficient intervening cause," Lytle's failure to travel at a less rate of speed and to see the black gondola car in time to stop, being a cause intervening between the first wrongful cause of unnecessarily leaving the car upon the crossing and the final injury to Vilate Lytle, which might reasonably have been foreseen and anticipated by the original wrongdoer (the appellants), is not such "efficient intervening cause" as will relieve the original wrong of its character in law as the proximate cause of the injury. *Page 198 
Fay v. Minneapolis, St. P. S.S.M. Ry. Co. (Wis.), 111 N.W. 683; Southern Ry. Co. v. Floyd (Miss.), 55 So. 287.
 OPINION
Plaintiff brought this action as administrator of the estate of his deceased wife to recover damages for her death alleged to have been caused by the negligence of the defendants. The court, sitting without a jury, rendered judgment in his favor for the sum of $12,500. The defendants moved for a new trial, which was denied. This appeal is taken from the order of the court refusing a new trial and from the judgment.
In the early morning of February 12, 1932, in Clark County, John M. Lytle, Jr., the son of the plaintiff, accompanied by his mother, Vilate Lytle, was traveling in an automobile northerly along Federal aid highway No. 91, a state highway commonly known as the Arrowhead Trail. He was driving. They had come from Los Angeles during the night and were on their way to Overton, the home of the parents. When they reached a point on the highway where it crosses the St. Thomas branch railroad of the defendant railroad company, the automobile ran into a gondola car which was standing on the branch line across the highway and Mrs. Lytle was fatally injured. The gondola car was a part of a train which the defendants were running westerly from St. Thomas to Moapa. Shortly before the automobile reached the intersection the train had arrived there and the crew was engaged in switching an empty car from a spur track just west of the crossing onto the branch line to attach it to the train. The switching operation could not have been accomplished if the train had pulled to the west so as to clear the crossing because the distance from there to where the spur joined the branch line was not great enough to accommodate all the cars of the *Page 199 
train. If the train had stopped clear of the highway east of the crossing, then in order to accomplish the transfer of the empty car to the train two additional trips over the crossing would have been necessary, one forward by the engine and tender, and one back by the engine tender and empty car.
It was still dark when John Lytle, Jr., and his mother met with the accident. The highway on either side of the crossing was oiled and dark in color. The gondola car was painted black. By reason of the fact that the approach to the crossing from the south was located in a cut with high embankments and hills on each side extending to within a few feet of the railroad, the crossing was a hazardous one under any conditions. From a point several hundred feet to the south of the railroad to the crossing the highway was on a descending grade. There were no lights there and no flagman or employee of the railroad company to warn travelers on the highway that the crossing was blocked. There were two railroad warning signs along the highway to notify travelers of the crossing, one being an upright cross-arm sign about 20 feet south of the crossing, and one an upright post with a round sign on top of the post with bullseye reflectors marked "R.R.," located about 600 feet south of the crossing. It is a matter of common knowledge that the highway is a transcontinental highway and is used quite extensively both day and night. The regular schedule on the branch line was one train each way per day.
From about 1,200 feet south of the crossing to it, the highway was straight. John M. Lytle, Jr., testified in plaintiff's behalf, in substance, as follows: He was 23 years of age in February, 1932. He used a 1929 Ford roadster on the trip. He knew how to drive and had driven a car a number of years before January 21, 1932. He drove a truck prior to that time quite a while. His business was driving trucks. The return trip to Overton from Los Angeles was started on the evening of February 11, 1932. On the night of February 10 he retired about 11 o'clock and had about 8 or *Page 200 
9 hours of sleep that night. He was never accustomed to getting any more sleep before he went on other trips. The automobile was in good condition and ran fine. It was equipped with good lights — standard equipment Ford headlights. The lights were sufficient to reveal an object 75 feet ahead of the lamps under normal conditions. The brakes were in good condition. They had been tried out before leaving town. He did not get off the road at any place and did not go to sleep. He was talking to his mother about a half or three-quarters of a mile from the crossing — told her they were almost home, or something to that effect. While he was driving down towards the crossing he was looking straight ahead watching the road. He had slowed down on the curve and as he approached the railroad he lessened his speed. The night was very dark and the highway was a black oiled road. He did not look for any train to be there because he did not see any lights to show that there was anything in the road. He was almost on the car before he saw it — about 20 feet away, or something like that. His best judgment was that he was traveling about 25 miles an hour at the time, and not more than 30. He tried to stop when he saw the gondola car across the road but could not. When he regained consciousness after the crash he was in the Las Vegas hospital. The driver of the automobile was the only eyewitness to the accident, the mother having died shortly after the crash. None of the train crew saw it, but the conductor of the train heard the sound of the automobile striking the car.
John Williamson, a witness in behalf of plaintiff, testified in part as follows: He was present soon after the accident occurred at the intersection of the Arrowhead Trail and St. Thomas branch of the Los Angeles Salt Lake Railroad. The black gondola car was across the highway. There were cars between the black gondola car and the caboose, possibly two. There is considerable elevation there, and it is a rough country. There are hills and rocks which obstructed the view as *Page 201 
to other cars and caboose. It was very dark that morning. He had to have a flashlight to work down there. The road had been oiled, and was dark in color, and the gondola car was dark in color. The hills on each side come pretty close to the road there. There is quite a cut there for several hundred feet approaching the railroad. The hills are not so dark in color. The road and the car naturally look dark at night. The hills are gray and brown, and they extend pretty well up on each side. On the one side they are about 15 feet, and possibly 10 or 12 feet on the other. There is more of a cut as you go down towards the railroad, and that cut runs about 400 feet.
Mr. Hitchcock, a witness for plaintiff, who lived near the scene of the accident, testified as to the environment. It was very dark that morning. He had to have a flashlight to walk down there. The road had been oiled and was dark in color, and the gondola car was dark in color. The hills on each side come very close. The road and car naturally looked dark at night. The hills are gray and brown and they extend pretty well up on each side. On the one side they are about 15 feet, and possibly 10 or 12 feet on the other. There is more of a cut as you go down towards the railroad, and the cut there runs down about 400 feet.
Albert Laub, a witness for plaintiff, who arrived at the scene, testified in part: It had been raining and the sky was very cloudy. When he got down there, there was a part of the train across the track — one car, and one car on each side of it. There is a deep cut there. The car that was across the highway was painted black. The highway was oiled, and it was really darker than a natural oiled road on account of being wet. It absorbed the light. The crossing is extremely dangerous.
Lamond Laub, a witness for plaintiff, testified in part as follows: He was there about 4: 30. The road was wet. It was an oiled road and dark in color. It was very dark. *Page 202 
There was evidence that it had not been raining and that the highway there was wet with gasoline which had escaped from the wrecked automobile.
On this evidence and other evidence introduced by defendants, which we will mention later, the trial court made a number of findings, which included findings that the time consumed in switching was not more than five minutes; that during this time defendants had left a black gondola car attached to other cars directly across the intersection of the highway with the railroad; that the highway was oiled on both sides of the intersection and was of a black color; that the highway west of the intersection was constructed in a cut, which left high embankments on each side of the highway and which extended to within a few feet of the railroad crossing; that there were two railroad crossing signs along the highway, one being an upright crossarm sign about 20 feet south of the crossing, and the other an upright post with a round sign on top of the post with bullseye reflectors marked "R.R." located 600 feet south of the crossing; that there were no lights at the crossing and no flagman or employee of the railroad company to warn travelers on the highway of the existence of the gondola car at the crossing; that said crossing was an extrahazardous one when approached on said highway from a southerly direction, on account of the cut and the high embankments on each side thereof, and its hazardous condition was enhanced by leaving such black gondola car across said highway without lights; that it is a matter of common knowledge that the highway in question is a transcontinental highway, and is used very extensively, both day and night; that the railroad, being a branch line, was not used as extensively as the highway; that defendants must necessarily be charged with knowledge of the existence of the highway, and that many travelers pass over the crossing at night; that John M. Lytle, Jr., would be chargeable with knowledge that trains pass over the crossing, but not that they would be allowed to block the crossing unnecessarily; that there was no necessity to block the *Page 203 
crossing with the gondola car while the switching was being done, as there was plenty of room to leave the unused portion of the train east of, and entirely off the crossing during the switching process, and the danger would have been lessened thereby to a great degree; that John M. Lytle, Jr., was driving at a rate of speed of 25 to 30 miles an hour down through the cut towards the railroad crossing; that the night was dark, the road appeared black, and the gondola car was black; that the lights on the automobile were burning and were good lights; that Lytle, Jr., did not see the gondola car on the crossing until he was within a few feet of the same; that he had applied the brakes on the car, but could not stop in time to avoid running into and under the side of the gondola car, which he did; that as a result of this collision Vilate Lytle was injured to such an extent that she died shortly thereafter, to wit, on the 12th day of February, 1932; that the defendants did not use the measure of care and diligence required of a railroad company under the circumstances, while it appears from the evidence that John M. Lytle, Jr., and his mother, Vilate Lytle, did use reasonable care under all circumstances.
From these findings the trial court concluded that the defendants were negligent in leaving said black gondola car standing across said highway, and that such negligence was the proximate cause of the accident and injury and death of Mrs. Vilate Lytle. The contentions of the defendants are just the reverse. They contend that defendants were not negligent, but if so, the driver of the automobile was guilty of contributory negligence, which was the proximate cause of the injury complained of; and that such contributory negligence is imputable to the deceased and bars recovery.
1. It may be stated as a general principle of law that a railroad company, in the absence of a statute requiring lights or other precautions, may not be chargeable with actionable negligence merely because its train is at rest on a crossing at a public highway, or in motion, and is run into by an auto traveling on *Page 204 
the highway. Certainly it cannot be so chargeable if the accident happens in the daytime, nor in the nighttime on account of darkness alone.
The case infra is one holding that a railroad company is not negligent in the absence of such a statute if the accident happens in the nighttime and there are no other elements of hazard than darkness. St. Louis-S.F.R. Co. v. Guthrie, 216 Ala. 613,114 So. 215, 56 A.L.R. 1110.
The question of the negligence of the defendants hinges on whether there were such other elements of hazard as to charge the conductor who had charge of the train, with the knowledge that the driver of an automobile whose machine was properly equipped with lights, and who was exercising reasonable care, would likely not see the obstruction on the crossing in time to avoid striking it. We think the circumstances on the night of the accident were sufficient to charge the conductor with such knowledge. He was familiar with the environment which prevailed at the scene of the accident. He knew that the highway was a transcontinental highway and used extensively by travelers in automobiles day and night. He knew, for he so testified, that the crossing was dangerous even in the daytime, that is, he said, to automobiles from approaching trains. He knew that the highway was dark, that the car was black; that the sky was black and the hills were brown; that there were high hills on each side of the crossing and a deep cut through the hills on a descending grade to the crossing which obstructed the vision as to cars or lights on the east or west until one was quite near the crossing. He knew, or ought to have known, that placing the gondola car across the highway under such circumstances would increase the dangerous nature of the crossing. The conductor testified that the car was there for three minutes and that the switching and recoupling and pulling the train over the crossing took a minute. So the crossing was blocked unnecessarily for at least two minutes. The argument that this was safer than to leave the entire train on the *Page 205 
east side, which could have been done, and consumed a minute in going forward with the engine and tender and back with the car from the spur track, and then forward with the entire train, does not appeal to us. The movement and noise of the train, the likelihood of the headlight on the engine, or other lights on the moving train attracting the attention of a driver, and the much lesser time that the crossing would be occupied by the train, or engine and tender, are elements opposed to the idea that the blocking of the crossing for a much longer period of time under the attendant circumstances, was safest for travelers on the highway. The testimony of the other trainmen coincided generally with the conductor, particularly as to his opinion that it was safer to block the highway, as was done, than to leave the train east of the crossing. Testimony as to conflicting statements of some of the witnesses for plaintiff was introduced by the defendants, but the weight of this was determined against them by the trial court.
2. We have not set out all of the evidence, either of the plaintiff or the defendants, but only such as we think is necessary to show the reason of our ruling, that the evidence is sufficient to sustain the findings of the court. The true rule, and which fits the circumstances of this case, is stated in 22 R.C.L. p. 994, and is as follows: "In the absence of statute, the mere fact that a railroad company obstructs a street or highway at a public crossing, by letting a train or cars remain thereon for a reasonable length of time, and for proper purposes, is not negligence, and the company is not responsible for injuries caused thereby. But a railroad company is liable for injuries caused by reason of such obstruction, when it amounts to negligence as where it allows its trains or cars to remain on the crossing unnecessarily, or for an unreasonable length of time, by reason of which injuries are received by one who attempts, with due care, to cross or go around the obstruction."
3. As to the care of a railroad company at a crossing, it is stated in 52 C.J. 210, 211, as follows: "The degree *Page 206 
of care required is only what, under the circumstances of the particular case, is ordinary care; or in other words, such care as an ordinary prudent person would exercise under like circumstances. It varies as peculiar and unusual conditions are presented. Where the crossing is especially dangerous, it is incumbent on the company to use increased care commensurate with the danger, even though the crossing is not a much traveled and used one, and the traveler upon it knows of its extrahazardous condition."
4. In the instant case the court found that the crossing at the time of the accident was extrahazardous. The evidence, in our opinion, is without conflict on this point. It shows an environment and use of the highway at that time which made the crossing unusually dangerous. A duty was therefore cast upon the defendants to exercise care commensurate with the condition existing. Instead of discharging this duty they increased the hazard of the situation. They placed a black car entirely across the highway, which, according to plaintiff's theory (and the evidence will bear such implication) so blended with the darkness, highway, and adjacent embankments as to practically camouflage the crossing. This act was unnecessary. In the daytime the car itself would have been sufficient warning to travelers on the highway that the crossing was blocked, but under the existing condition the placing of it on the crossing and leaving it without taking adequate precautions to warn approaching motorists of the danger, amounted to negligence.
In Prescott v. Hines, 114 S.C. 262, 103 S.E. 543, the action was for personal injury from collision of an automobile with a train standing across the street. There was evidence that the train was blocking one of the most traveled streets in the city of Columbia, and that the cars had no light of any kind upon them, or near them, or any guard or watchman to give warning; that on the night in question there was a fog or smoke that made the place where the cars were standing dark and obscured the same. This evidence was held sufficient *Page 207 
to go to the jury on the question of negligence. True, there was no fog or smoke in the instant case, but the evidence tends to show that a condition prevailed at the crossing of a more dangerous kind. The average automobilist, when he encounters fog or smoke obscuring his way, instinctively acts with caution. Whereas an obstruction in his road under such conditions that the lights of his car cannot reveal it may become a trap despite his vigilance. The extent to which a black surface will absorb the light of an automobile is known to every motorist.
In Chicago N.W. Ry. Co. v. Prescott (C.C.A.), 59 F. 237, 23 L.R.A. 654, the court held: "The mere grant of a license to lay a railroad track across a public street gives no authority to stand cars thereon, so as to obstruct the crossing, for such periods as may suit the company's convenience; and whether it had a right to do so, in any particular instance, is a question for the jury, if the circumstances are such that reasonable persons might entertain different views as to whether the blockade was justifiable."
5, 6. Was the driver of the auto guilty of contributory negligence? As previously stated, he was the only eyewitness surviving the accident. The substance of his testimony has been heretofore set out. Considering it in the light of the environment presented by the evidence, we think that at least it discloses a case where reasonable men might honestly differ in opinion, and was therefore a question for the trial judge to determine. Bunting v. C.P.R.R. Co., 14 Nev. 351; Orange N.W.R. Co. v. Harris et al. (Tex.Civ.App.) 57 S.W.2d 931. The question of contributory negligence on the part of a motorist is generally for the jury. 4 Berry Automobiles (7th ed.), page 156; Elliott v. Missouri Pac. R. Co., 227 Mo. App. 225,52 S.W.2d 448, 451.
In the case last cited it appeared from the complaint that the street paving was a concrete slab, and on the crossing a train of dark coal cars was permitted by the defendant to remain standing for thirty minutes *Page 208 
or more across the street, completely blocking all traffic on said street, which was extensively used at all hours of the day or night, by all kinds of motor and other vehicles. It was dark, and the weather was misty and foggy. With matters in this condition, the plaintiff's automobile coming along the street violently crashed against the cars of said train standing on the crossing. The court's remarks in passing on the question of contributory negligence are pertinent to the situation in the instant case. The court said: "Nor can such contributory negligence so appear unless we must say that, regardless of the circumstances, the mere driving of the automobile down the street and into a silent, invisible, unexpected, and waiting line of dark coal cars, is negligence as a matter of law. * * * But the atmospheric conditions were not normal. And before it can be said as a legal conclusion that plaintiff was negligent in not seeing the cars, it must be assumed that, under the conditions and circumstances of that particular occasion, the cars could have been seen in time to have stopped. But it is well known to every motorist, of more than mere infantile experience, that with an obstruction of the color here shown, motionless and without noise, blending perfectly with the moist pavement beyond and the dark sky above, and the automobile lights filtering through the particles of mist, the coal cars would not be visible until almost upon them, and it then is everlastingly too late. It is a well-known fact that under such conditions the paved roadway ahead will present a uniform appearance looking entirely like the open roadway until within a few feet of an object when it will suddenly, for the first time, unexpectedly flash into view, and not appear until then in spite of the most intense and penetrating gaze bent to the front. The motorist knew a line of railway was there, it is true, but so far as appearances went, the street seemed to be open and unobstructed. It is not a case of failure or neglect to see that which was visible, but of inability to see what was in fact an obstructed, but appeared to be an open, roadway. And *Page 209 
this situation and appearance will arise under such circumstances notwithstanding the motor lights may be of the best, and shining brightly."
And again the court said: "We do not controvert for a moment the idea that if plaintiff drove his automobile in the dark onto the crossing knowing that he could not see what, if anything, was there, he would be guilty of contributory negligence as a matter of law. But the situation here is that, under the circumstances given, he drove his car into what appeared to be the open roadway at the crossing but which was in fact wrongfully and unlawfully obstructed by defendant without taking the least precaution to guard against injury caused by such silent, noiseless, and undiscernible obstruction."
So we say, if the crossing in the instant case had been shrouded in smoke or fog, and the driver of the automobile, observing this, had undertaken to drive over the crossing, he would have been guilty of contributory negligence. But no such case is before us.
In the case just quoted from it is true the cars were permitted to remain standing on the crossing for thirty minutes or more while in the instant case the gondola car had been blocking the highway for a much shorter period, but the matter of time can have no bearing on the question of contributory negligence.
Concerning authorities dealing with approaching trains or trains moving over a crossing, we think they are not applicable to the facts of this case. As stated in Elliott v. Missouri Pac. R. Co., supra: "If the cars had been moving as plaintiff approached, the movement itself might have been sufficient to disclose their obstructing presence."
There are other elements which render such cases inapposite.
We have examined the other errors assigned by defendants and find them to be without merit.
The judgment and order appealed from are affirmed.
TABER, J.:
I concur. *Page 210