NEVADA TRANSFER AND WAREHOUSE COMPANY, a Corporation, Appellant, v. AMY J. PETERSON and ANDREW E. PETERSON, Respondents.

No. 3267

April 6, 1939.                    38 P.(2d) 8.

*George B. Thatcher, William Woodburn,* and *William J. Forman,* for Appellant.

*Lloyd V. Smith,* for Respondents.

## OPINION

By the Court, DUCKER, J.:

This case is before the court on a motion to strike portions of the bill of exceptions, and petition to disallow appellant's objections contained therein. The matter challenged in this way is found in appellant's bill of exceptions from page 304 to 314, and consists of certain instructions proposed by appellant and refused by the court, or modified by the court and given; certain instructions proposed by respondents and given, or given as modified; and appellant's objections thereto and exceptions to the rulings of the court in each instance.

In support of their motion and petition respondents presented their bill of exceptions and an affidavit of their counsel showing steps taken by them in the court below to prevent the matter complained of from being incorporated in appellant's bill of exceptions and the reasons therefor. Counsel for appellant objected to their consideration. In view of our conclusion as to the merits of respondents' motion and petition, their bill of exceptions and counsel's affidavit may be put aside.

Appellant makes several points against the allowance of the motion and petition, or either. The first of these being well taken, those remaining need not be considered. The point is that there is no statute authorizing this court to strike or disallow a part of a bill of exceptions. Sec. 8872 N. C. L. (reenacted in chapter 32 of the Statutes of 1937 at page 64) on which respondents base their contention, provides a method for proving an exception which the trial judge has refused to allow in accordance with the facts. If such exception is allowed by the supreme court it becomes a part of the record in the cause. This is the extent to which the foregoing statute empowers this court, in force and effect, to alter a bill of exceptions. Nowhere

is this court given authority to expunge anything from a bill of exceptions. The action of the lower court is conclusive as to matter incorporated in it.

Respondents also base their motion and petition on a certain statement made by the court in the case of Miller v. Miller, 36 Nev. 115, 134 P. 100, 104. The statement relied on is as follows: "if either party to the action feel aggrieved by reason of matters either inserted in or omitted from the statement, that party may apply to this court under section 374 of the civil practice act to prove either certain exceptions were reserved to rulings actually made, *or that no such exceptions were made or reserved.*" (The italicizing is ours.)

Section 374 of the civil practice act referred to above was as to the method provided for proving an exception, the same as the provision before us.

It will be observed on a careful reading of the opinion in Miller v. Miller, supra, that the statement italicized above is dictum. The application to the court was to prove exceptions. True, the petitioner also asked to have his statement settled without the insertion of certain matter required by the respondent judge to be inserted therein but this was pursuant to his application to prove his exceptions and the matter he claimed to be in proof thereof. That the supreme court so considered the application is apparent from its statement on page 125 of 36 Nev., 134 P. at page 103 of the opinion, "if it be anything it is only a case in which certain exceptions contended for by petitioner have not been allowed."

■ Moreover, the application was held to be premature for the reason that the trial judge had not settled the bill of exceptions. It is significant to note that the language relied on by respondents as ruling, was not even in substance stated in the syllabus. It is interesting to note that the court, more than once in its opinion, stated the sole purpose of said section 374 to be as we have concluded, as to the provision before us. On page

126 of 36 Nev., 134 P. on page 103 of the opinion the court said: "The sole purpose and aim of the statute is to permit a party aggrieved, under a proper application to prove an exception actually taken to a ruling actually made, and when so proven the exception and ruling and the facts applicable thereto become a part of the record on appeal, but not in the nature of an amendment to the bill of exceptions or statement on appeal as settled by the trial court." Again on page 127 of 36 Nev., 134 P. on page 104 the court said: "The sole object of the statute is to afford relief to a party aggrieved when a trial judge has refused to allow an exception according to the facts; that is, where he has refused to admit by allowance that a particular ruling was made and excepted to when in fact it was made and excepted to."

Furthermore, the point is not open to controversy. It was determined adversely to respondents' contention in Ryan et al. v. Landis et al., 58 Nev. 253, 74 P.(2d) 1179. See also Quinn v. Quinn, 53 Nev. 68, 292 P. 620, 295 P. 1111, 2 P.(2d) 130.

The motion to strike and petition to disallow are hereby denied.

TABER, C. J., concurs.

COLEMAN, J., died before the foregoing opinion was completed.

ORR, J., did not participate in the consideration of any matters connected with this case.

ON THE MERITS

March 5, 1940.                                    99 P.(2d) 633.

92

George B. Thatcher, William Woodburn, and William J. Forman, for Appellant.

Lloyd V. Smith, for Respondents.

## OPINION

By the Court, DUCKER, J.:

This action was instituted by respondents, who are husband and wife, to recover damages for personal injuries sustained by the latter. The facts out of which the action arose may be stated substantially as follows: Appellant corporation at the time of the trial and for some years prior thereto, was engaged in a general warehouse business and owned and operated a large warehouse building in Reno, Nevada. H. E. Stewart was the secretary of the company and owner of 99½% of the stock thereof. At the time of the accident which resulted in the injuries complained of, the warehouse was divided by a long aisle or passageway extending from the rear entrance on the easterly side of the building to the office on the westerly side of the building. On the northerly side of the building were three large rooms. The one on the easterly end of the northerly side of the building was known as the "packing room" and the one in the center, where a truck runway was located, was called a "receiving" or "delivery" room. The truck runway in the receiving room was so constructed as to form an inside loading and unloading dock, the floor of such runway being approximately 4 feet lower than the floor of the remainder of the room. The runway was approximately 16 feet wide and 20 feet long and was almost flush with the wall separating the receiving room from the larger room on the westerly side. There was no guard rail around the runway, and no light in the receiving room. It was used almost exclusively in the day time. There was a doorway between the receiving room and the aisle or passageway, and a doorway between the receiving room and the packing room, but no doorway from the aisle to the latter room. There were two doorways in the easterly wall of the packing room opening onto a loading platform connected with the building which extended from the northeast corner of the building to a short distance

beyond the rear entrance to the said aisle or passageway.

At the time of the accident respondents were living together in a house located on the premises of and owned by appellant, situated about 50 or 60 feet northerly from the warehouse. Formerly they had resided for some years in a portion of the warehouse. In November 1935 a part of appellant's warehouse burned, and was reconstructed, such reconstruction being completed about the 28th of February 1936. The northerly side of the warehouse was a concrete wall. At the time of the reconstruction it was drilled by air drills and a large opening 14 by 16 feet on a level with the adjacent street or driveway made therein whereby trucks could drive directly into the runway. There was a large overhead door in the opening of the runway.

Tom Ginnochio was night watchman. He had charge of the warehouse at night and was on duty when Mrs. Peterson was injured. Peterson was foreman at that time and had been an employee of the appellant at the warehouse for a number of years. On the night of July 7, 1936, he was at work loading furniture from the larger room on the north side of the warehouse. At about eight o'clock on that evening he called from the door of that room to his wife, who was in the yard of their home, to bring him a flashlight. She obtained the flashlight from her home and entered the warehouse building through the rear entrance to the aisle. Peterson came through the larger room and met her about midway of the aisle, got the flashlight, and returned to his work, telling her he would be along in a few minutes. She started to leave the warehouse by the same way she came in when she met Tom Ginnochio, who was unloading case goods from the truck. He asked her to go into the office because a truck driver was in there telephoning, and he didn't care to have the man in there alone. She remained there from twenty minutes to half an hour, and on attempting to leave the building by the same way she had entered, she found

the passageway filled with the case goods Ginnochio had been unloading. She asked Ginnochio how to get out. He told her to go through the packing room and he would let her out another door. He said, "Go right around there and come out of the packing room." To reach the packing room from the aisle she had to go through the receiving room, where the truck runway was located. She entered the receiving room, and on going forward fell into the runway, fracturing and dislocating her right elbow, and suffering other injuries.

Appellant contends that the trial court erred in refusing to grant a new trial because the evidence failed to establish any duty owed by appellant to respondents which was breached. This contention is grounded in part of the theory that Mrs. Peterson was on the premises as a trespasser, or bare licensee, to whom appellant owed no duty, except to refrain from willfully or wantonly injuring her. In support of this position it is argued that Peterson was without authority to invite her to come upon the premises because Stewart testified that before the accident he once or twice requested Peterson to ask her not to come on the premises.

On the other hand respondents contend that she was on the premises as an invitee. We are inclined to this view, irrespective of what the evidence may show as to Peterson's implied authority to invite her to the premises. Ginnochio, who had charge of the warehouse at night, requested her to go to the office to attend to a duty for him which he was unable to do because he was at the time engaged in the performance of other duties. One in charge of premises has authority to do thereon any reasonable act to accomplish the discharge of his duties. There was nothing unreasonable in requesting Mrs. Peterson to stay in the office. She was no stranger to Ginnochio, or to the premises. She was the wife of his fellow employee and lived close to the warehouse; had formerly lived in the warehouse and was frequently seen on the premises. She had just performed a chore

for her husband by bringing him the flashlight. There is nothing to show that Ginnochio had any knowledge that Stewart had requested Peterson to ask his wife not to come on the premises. An additional reason for holding that Ginnochio had implied authority to invite her to the office may be found in the fact that her going there was for the benefit of appellant. Smith v. Pickwick Stages System, 113 Cal. App. 118, 297 P. 940. "An invitation is implied where the entry on, or the use of, the premises is for a purpose which is, or is supposed to be, beneficial to the owner or occupant. * * * " 45 C. J. 812, and cases cited in note 38.

■ Mrs. Peterson's legal status at the time she suffered injuries being that of an invitee, appellant owed her the duty of ordinary care. Even so, appellant insists that the evidence fails to establish a breach of that duty which would justify the verdict and judgment thereon. On the other hand, respondents contend that the action of Ginnochio in blocking the passageway through which she entered the warehouse, and directing her to a way out into a place of unknown danger, constituted negligence on his part chargeable to appellant, and which was the proximate cause of her injuries. Ginnochio was familiar with the interior of the warehouse. He knew of the open pit or runway in the receiving room and the danger attending it. His testimony concerning which is undisputed, is as follows:

"Q. Were there any guard rails or means of any kind to guard the open pit, to prevent people from falling into it? A. No.

"Q. Did you know the open pit was in that room? A. Yes, sir.

"Q. Have you ever fallen into it? A. Yes, sir, I have.

"Q. Was it before the occasion that Mrs. Peterson was injured? A. Yes, sir.

"Q. At the time when you told Mrs. Peterson to go through the packing room to get out, did you know the open pit was in the room? A. I did.

"Q. Why didn't you tell Mrs. Peterson it was there? A. I told her to be careful as you go out, go out that door. There was a light from her door on the back porch could throw light into the pit, that she could possibly see it, but there was a couple of van boxes there on both sides loaded with furniture.

"Q. Did you tell Mrs. Peterson that there was a pit in the room? A. Well, sir, I could not recall. I don't think I did. I don't know whether I did or not, I could not say.

"Q. Were there any lights in the packing room? A. Yes, sir, one little light.

"Q. Was that lighted? A. Well, I don't know, I unloaded a lot of meat there. I don't know if I turned it off or not. It was lit at the time I unloaded. I believe it was. I would not swear to it.

"Q. Was that light inside or outside the packing room? A. The light from her door could have throwed some reflection that could have been light there.

"Q. Was there any lighting fixture in the packing room itself? A. By the pit?

"Q. Yes. A. No, sir."

The evidence shows that the van boxes loaded with furniture, testified to by the witness, made almost a complete passageway about 6 or 8 feet in width, from the entrance to the receiving room, to the pit. The van boxes on the left of the entrance extended from the door a short distance over the pit, while the one on the right extended to a point opposite the south end of the pit, leaving an open space of four feet between the van box and the southeast corner of the pit. Consequently, one passing through would be perilously close to the verge of the pit. In the condition of partial gloom existing there, the jury had a right to consider the pit a place of danger to one attempting to pass from the entrance to the receiving room to the packing room.

██ The condition was known to Ginnochio, and it was negligence on his part to direct her to go there without warning her of the danger in her path. The

general rule applicable here is well expréssed in 45 C. J., p. 875, as follows: "If the owner of land knows that its condition is unsafe he should give timely warning to persons rightfully there. More specifically, an owner or occupant of lands or buildings who knows, or in the exercise of reasonable care should know, of their dangerous and unsafe condition and who invites others to enter upon the property owes to such invitees a duty to warn them of the danger, where the peril is hidden, latent, or concealed or the invitees are without knowledge thereof."

Ginnochio testified that he told her to be careful, but that was not enough to relieve him from negligence. As if the keeper of a skating pond advised a skater to go upon the ice and be careful, when he knew of a place where the ice was thin and the water deep, which was unknown to the invitee, Ginnochio should have apprised her of the imminence of danger arising from the pit or runway extending almost across her path in the semi-darkness of the room. Appellant insists that the rule stated does not apply because the danger was known to Mrs. Peterson, and was also obvious, but of these elements we will speak later.

The argument that Ginnochio was not acting within the scope of his employment when he advised her as to the way out, is, we think, unsound. He had full charge of the warehouse at night, was the night watchman, and it would be too curious to believe that she must have been left to find a way out at night because the watchman lacked the authority to suggest such a way.

It is contended that Ginnochio alone was liable because there is no affirmative evidence showing that it was part of his duties to direct person's movements in the warehouse. We say it would be unreasonable to conclude that his duty to direct Mrs. Peterson to a safe. way out, after he had detained her there and blocked the safe passageway by which she had entered, was not included in his general duties as night watchman. It

was clearly incidental to appellant's business. Pound-stone v. Whitney, 189 Wash. 494, 65 P. (2d) 1261; 39 C. J. 1283; 2 Mechem on Agency (2d), sec. 1879, Lachat v. Lutz, 94 Ky. 287, 22 S. W. 218, 219, 15 Ky. Law Rep. 75, cited by appellant, is not in point. It does not appear that the person who directed the plaintiff to go into the room where he was injured was an employee of the defendant. And the court held that even if he were an employee, he alone could "be made liable for the injury, because he was not then acting in the line of his duty, or by the direct or implied authority of defendant." The opposite situation appears in this case, we believe.

While there is dictum in the case of Chesley v. Nantasket Beach Steamboat Co., 179 Mass. 469, 61 N. E. 50, favorable to appellant's contention, the situation was not exactly the same, and it was decided on the fact that the plaintiff was guilty of contributory negligence. Keating v. Michigan Cent. R. Co., 97 Mich. 154, 56 N. W. 346, 37 Am. St. Rep. 3228, is not in point. Ginnochio's negligence was the proximate cause of the injuries sustained by Mrs. Peterson.

It is contended that the court erred in instructing the jury by its instructions numbered 17, 19 and 32.

No. 17 reads: "The Court instructs the jury that if you believe from the evidence in this case that an agent and employee of the Defendant corporation, while acting within the scope of his employment, invited and requested the plaintiff, Amy J. Peterson, to come upon the premises of the Defendant corporation, and if you further believe from the evidence that the dangerous condition of the premises was unknown to the Plaintiff, Amy J. Peterson, that it was then the duty of the Defendant corporation or its agent and employee to warn the Plaintiff, Amy J. Peterson, of the dangerous condition of the premises, of which condition the Defendant corporation is charged with knowledge, and a failure to so notify the Plaintiff, Amy J. Peterson, of the dangerous condition of the premises would constitute negligence on the part of the Defendant corporation."

No. 19 reads: "The Court instructs the jury that if you believe from the evidence that one of the agents and employees of the Defendant corporation directed the plaintiff, Amy J. Peterson, as to the passageway through which she should leave the premises, that said Plaintiff had the right to assume that the said passageway would be in a reasonable safe condition."

No. 32 reads: "The Court instructs the jury that it was the duty of the Defendant corporation to provide reasonably safe passages to and from the places included in its invitation to use the premises; and if you believe from the evidence that the Plaintiff, Amy J. Peterson, was invited and requested to use a passageway which was in a dangerous condition, and that the Plaintiff, Amy J. Peterson, did not know of the location of said loading pit, then the invitation and request to Plaintiff, Amy J. Peterson, to use said passageway constituted negligence on the part of the Defendant corporation."

One objection to instruction 17 is that it informs the jury that they should find appellant guilty of negligence, even though the existence of the runway was obvious to Mrs. Peterson. True this qualification is not found in the instruction, but a court should not be required to give all the law in one instruction. And the element of evident danger which would have relieved appellant of the duty of warning Mrs. Peterson is found in instruction 24. It reads: "You are instructed that a landowner is not under a duty to warn a person coming upon its premises of dangers where such dangers are obvious or the person injured has actual knowledge thereof."

So the question raised was fairly and explicitly submitted to the jury. Considered together, the two instructions correctly state the law on this phase of the case. It is well settled by a line of decisions dating from the earliest history of the court that all of the instructions must be taken together by the jury and considered together. Caples v. Central P. R. R. Co., 6 Nev. 265; Allison v. Hagan, 12 Nev. 38; Solen v. Virginia &

Truckee R. R. Co., 13 Nev. 106; Cutler v. Pittsburg S. P. M. Co., 34 Nev. 45, 116 P. 418. Moreover, the court instructed the jury not to select a single instruction, or a portion of an instruction alone, but to consider all of the instructions together in determining any issue in the case.

The objection that instruction 17 was improper for the reason that there was no evidence that her husband, who invited her to come upon the premises, was acting within the scope of his employment, is without merit. As we have previously pointed out, Ginnochio, who requested her to go to the office and directed her to a way out of the building, was acting within the scope of his employment.

The objection to instruction nineteen is that it was not qualified in any way by requiring that the employee who directed Mrs. Peterson as to the passageway through which she should leave the premises, was acting within the scope of his employment. Taken with the rest of the charge the jury were correctly instructed in this respect.

It is contended that instruction thirty-two was erroneous in that it assumed that the loading pit was in a dangerous condition, and was in a passageway. There is no assumption of either in the instruction. The jury were justified in finding from the evidence that both conditions existed. The event itself was sufficient to show that the runway was in a dangerous condition, for any one to fall into it. The presence of vanboxes from the entrance on the one side, and from the wall to near the pit, on the other, made a virtual passageway. The instruction was not erroneous for the reasons given.

The next contentions are that respondent, Mrs. Peterson, was guilty of contributory negligence as a matter of law, and the court incorrectly instructed the jury in respect thereto, and failed to give the necessary instructions as to her contributory negligence.

Appellant presents cases to the effect that it is contributory negligence, as a matter of law, for a person

to proceed in darkness in unfamiliar surroundings, when he is unaware of what the darkness contains. But we think these cases may be distinguished from the instant one. The jury could well have found that Mrs. Peterson did not enter or proceed in a room clothed in total darkness. She testified:

"Q. When you got into this room on the north side of the building, you could see the daylight or the lights outside? A. I could see the lights outside through this glass.

"Q. Was it daylight or the electric light? A. It was the light from my porch.

"Q. And were there no lights in that room? A. No, sir.

"Q. Were you able to see anything in that room? A. I don't remember.

"Q. Was it dark or light in the room? A. It was light enough so that I could keep going.

"Q. Could you see where you were going? A. I guess not, or I would not have fell into the pit.

"Q. Were you feeling your way along? A. Yes, sir, I was.

"Q. Were you just feeling with your foot? A. I had my hand out.

"Q. Then what happened? A. I dropped into this pit.

"Q. You walked off the platform? A. I didn't know that I had did that until I came to and found myself all broken up. * * *

"Q. Now, earlier in your testimony, on cross examination you testified that when you entered this storeroom wherein the pit was located, you were feeling your way along with your hands; is that true? A. Yes.

"Q. What were you feeling with your hands? A. I thought it was a wall.

"Q. Was there any light in the room at all? A. There was light enough I could see to walk along. I thought I was safe in going ahead, because the floor all looked level in front of me."

As to the condition of light and darkness in the receiving room at the time of the accident, Peterson testified:

"Q. At the time the accident happened? A. I went right in.

"Q. Were there any lights then? A. None. The only light that shone from the east door of the packing room, and the lights that shone from our back porch in the big lights, the overhead door that leads into the pit.

"Q. Could you see where you were going when you went in there? A. I could see very good up high. You could see the floor but you could not possibly see this hole unless you knew it was there.

"Q. You could not see what? A. This here pit, unless you knew it was there. * * *

"Q. Were there any electric light fixtures or electric lights in that room? A. None.

"Q. Were there any over in any other room in the house? A. Just one light in the main aisle about the center of the building, and that had a little square hole, I should judge about five inches square, cut so the light would show in, and it shone over the box, and shining in there it showed a pretty good light in there.

"Q. Was there sufficient light from that so you could see the open pit? A. No, you could not see the open pit unless you knew it was there."

In the case of Kurre v. Graham Ship by Truck Co., 136 Kan. 356, 15 P. (2d) 463, 466, cited by appellant and quoted from at length, the plaintiff was held guilty of contributory neglect as a matter of law. It presents a different situation. The invitee was not directed by an employee into a place of danger. He voluntarily entered a dark room in search of the shipping clerk. His testimony showed, and the court said: "It was very dark—so dark that he could not see, and he made some effort to feel his way with his feet."

In Powers v. Raymond, 197 Cal. 126, 239 P. 1069, the darkness of the by-path into which the person injured wandered, was impenetrable, and she was a mere licensee.

In Erickson v. McKay, 207 Wis. 497, 242 N. W. 133, the injured person testified that "it was probably as dark as it could be."

The plaintiff, in Herman v. Golden, Mass., 9 N. E. (2d) 394, was groping in a dark hallway for an elevator gate which he knew might not be in place, when he fell down the shaft. The court intimated, but did not hold, that he was guilty of contributory negligence as a matter of law.

■ We think the question of Mrs. Peterson's negligence was for the jury. As previously stated, she did not proceed in total darkness. The reflection of light in the receiving room was sufficient to enable her to see the floor, but it looked level in front of her. She was corroborated as to this deceptive appearance by her husband, who testified: "I could see very high up. You could see the floor but you could not possibly see this hole unless you knew it was there."

A similar situation was present in Marston v. Reynolds, 21 Mass. 590, 98 N. E. 601, 602, in which the court said: "It could be found that the front portion of the basement was unsafe unless properly lighted, because the platform extending across the basement for a space of five feet from the front wall was eighteen or twenty inches above the cellar bottom, and there was no guard to protect one from the danger of the unusual depression, or to call it to the notice of one unfamiliar with the premises. There was ample evidence that at the time of the accident the light in the basement was too dim to enable the plaintiff to see the edge of the platform or to perceive this dangerous difference in level; and Otis, who directed her attention to the coal bin in the rear of the cellar, failed to give this elderly woman any warning of the imminent danger known to him."

And as here, Ginnochio failed to give this woman any warning of the imminent danger known to him.

An illusion similar to the seeming continuity of the level of the floor in the receiving room may be found in Los Angeles & S. L. R. Co. v. Lytle, 56 Nev. 192, 47

P. (2d) 934, 52 P. (2) 464, and Elliott v. Missouri Pac. R. Co., 227 Mo. App. 225, 52 S. W. (2d) 448, where it was held that whether plaintiff was guilty of contributory negligence was for the jury.

■ On the same evidence the jury had the right to find that the danger was not obvious. Also the question as to whether the danger was known to Mrs. Peterson on account of her knowledge of the presence of the unguarded runway in the receiving room, was for the jury. In this respect she testified positively as follows:

"Q. Did you know of the fact that there was a loading pit in the storeroom? A. I did not.

"Q. Did you know of the fact that there was a loading pit in the building at all? A. I did not.

"Q. Had you ever been in this room wherein this open pit was located at any time previous to the accident? A. I had not."

It is argued by appellant that she must have known because of the evidence showing the proximity of the back porch of her residence to the runway by reason of which she could look from the porch into the runway when the door was open. And also the fact that she was familiar with the warehouse, having made her home in it for a time. The same argument was doubtless properly addressed to the jury, which rejected it. The most such evidence proves is that she had ample opportunity to know of the presence of the runway. It is not a case where the physical facts confute the testimony of a witness, and, therefore, must control. The jury were correctly instructed as to known danger.

■ Error is claimed in the ruling of the court in refusing the following instruction: "You are instructed that if you find from the evidence in this case that plaintiff, Amy J. Peterson, entered the room in which the alleged injury occurred and could not see, and proceeded in such darkness, without any knowledge, information or investigation as to what such darkness might conceal, then said plaintiff was guilty of contributory negligence."

The instruction was properly refused because it assumed a fact not in evidence. There is no evidence that the darkness of the receiving room was of such degree that Mrs. Peterson could not see. True, as in the case of Perry v. Loew's Boston Theatres Co., 291 Mass. 332, 197 N. E. 54, cited by appellant, there was a dim reflected light on the theater stairs on which plaintiff fell. But in that case she was a voluntary on the stairs and no latent danger was involved. There was no evidence of any defect in the stairs. Any danger in descending them was therefore obvious. Surely one must take notice that stairs are stairs, and assume the risk of descending them, unless there are other circumstances unknown to the party that would render it perilous. The case is therefore to be distinguished from the instant one. The jury were correctly instructed on the question of Mrs. Peterson's contributory negligence.

█ It is contended that respondents are barred from recovery by contributory negligence of Andrew Peterson, and the court incorrectly instructed the jury in respect thereto. That they were so barred is based upon the contention that the cause of action, if any existed, was a community cause of action. We think the determination of this question is not necessary to a decision in this case. If Peterson was negligent in inviting Mrs. Peterson to come upon the premises, such negligence was not the proximate cause of the injury. Weck v. Reno Traction Co. 38 Nev. 285, 149 P. 65. This court, in that case, quoting approvingly from Smith v. Conn. Ry. & Ltg. Co. 80 Conn. 268, 67 A. 888, 889, 17 L. R. A. (N. S) 707 said: "Negligence is only deemed contributory when it is a proximate cause of the injury. That only is a proximate cause of an event, juridically considered, which, in a natural sequence, unbroken by any new and intervening cause, produces that event, and without which that event would not have occurred. It must be an efficient act of causation separated from its effect by no other act of causations. * * * "

Assuming that Peterson was negligent, it did not

produce the accident. Another cause intervened without which the accident would not have happened. But for the action of Ginnochio in diverting her into the office and thence into the receiving room, she would have retired from the building by the way she had entered, through the main aisle or passageway. She always entered the warehouse through this passageway. She testified:

"Q. After you delivered the flashlight, by what method did you start to go out of the warehouse? A. I turned and started to go out.

"Q. By the same way you came in? A. Yes, sir.

"Q. By the same passageway? A. Yes, sir."

If Peterson had known that his wife intended leaving by the way of the receiving room and had failed to warn her of the danger of the runway, he would have been guilty of negligence contributing to the injurious result. But he did not know this. It is apparent from the testimony that he thought she had left the building by the same way she entered it, and did not know of her presence until sometime after he had received the flashlight from her in the main aisle or passageway, when he found her injured, having been attracted there by her screams. Peterson testified: "I walked to the center of the aisle * * * and my wife came in the back door, and I walked maybe four or five feet and met her and took the flashlight and told her I would be along in a few minutes. * * * I went back to check off the rest of the pieces of furniture."

As Peterson's negligence, if any there was, did not proximately cause the accident, the court did not err in instructing the jury "that the plaintiff's right to recover judgment for damages is in no way affected by the fact that her husband is one of the plaintiffs in the action, or that he was employed by the defendant corporation."

Complaint is made of the ruling of the court in granting plaintiff's motion to amend their complaint by striking therefrom the following language: " * * * and

was in charge of their premises and warehouse, located at 440 Valley Road, Reno, Nevada, and was acting as foreman in connection with the warehouse business of the said defendant."

This amendment removed from the complaint the allegation that Andrew E. Peterson was employed by appellant in the capacity stated. If there were error in this respect it is not apparent how any substantial right of appellant was affected. A new trial was properly denied.

The judgment and order denying a new trial are affirmed.