PALUM v. LEHIGH VALLEY R. CO.
No. 44, Docket 20633.

Circuit Court of Appeals, Second Circuit.
Jan. 7, 1948.

See, also, 65 F.Supp. 1010.

Blank & Convisser and Morris S. Borden, all of Brooklyn, N. Y. (William Samuels, of Brooklyn, N. Y., on the brief), for Stanley Palum, plaintiff-appellee.

Alexander & Green, of New York City (Donald M. Dunn and Eugene Z. DuBose, both of New York City, of counsel), for Lehigh Valley R. Co., defendant-appellant.

Before AUGUSTUS N. HAND, CLARK and FRANK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff worked for the defendant Lehigh Valley Railroad as a machinist's helper for some eighteen years. Thereafter he worked on its engines as a fireman for about three years. While thus engaged he suffered injuries alleged to have been due to the defendant's negligence and has brought this action to recover damages therefor. Prior to August 21, 1945, when he sustained his injuries, he had worked as fireman only on the defendant's Wyoming Division. That Division extended from Sayre, Pennsylvania, to Lehighton—a distance of about 153 miles. Before he was accepted by the railroad as a fireman he was required to make and did make three trips on a locomotive between Coxton and Lehighton with a qualified engineer and fireman. In that way he became acquainted with the road, the close clearances, the bridges and the sidings of the Division on which he was to work; the engineer approved his qualifications, and he became a reserve fireman on the Wyoming Division, working out of Coxton. The morning of the accident he was summoned to work by call at the Coxton Yard and was assigned as a fireman on the President's Special which was to make an official inspection tour on which he was to work with

Engineer Hartley with whom he had previously served on the Wyoming Division but, at the time he was assigned, he was not notified as to where the inspection tour was to be made. His duties as fireman were to assist the engineer, watch out for signals and switches, take care of the fires, maintain steam, take on water, watch the water in the boiler of the engine and see how much water was in the boiler. There were two ways to test the water supply for the engine: the first by turning the try-cock on the left side of the tank; the second, if no water flowed from the try-cock, to go over the coal, stick a rod through the manhole cover and thus definitely determine how much water was in the tank. Wolbert, an assistant road foreman of engines, testified that he had at times used the manhole test and had observed other firemen and engineers use it while trains were in motion. Neifert, who was an engineer on the President's Special, testified to the same effect.

Before starting out on the inspection trip the plaintiff took on a full tank of water at Coxton. The train—the cab of which carried Hartley, the engineer; plaintiff, the fireman; Snyder, the telephone man, and Wolbert, the assistent road foreman of engines—then proceeded to Tannery where certain officials boarded it. It then traveled to Ashmore. It was conceded that the distance form Coxton to Tannery to Ashmore was 54 miles. At Ashmore the water tank was again filled. The train remained at Ashmore for about one-half hour while the officials made their inspection, during which time the boiler and blower were being used causing additional steam consumption and water usage. At Ashmore the train crew was changed; Hartley, the engineer, was replaced by Neifert because, as Hartley stated, he was not qualified over that area where the train was next scheduled to travel; Shea, the conductor, whose duties as he described them were "not very difficult" was also relieved at Ashmore for the same reason.

Notwithstanding the fact that the defendant maintained an extra firemen's list of twelve to fifteen men at Hazelton, 4.4 miles from Ashmore, and even though the plaintiff—like Hartley the engineer and Shea the conductor—was completely unfamiliar with the road characteristics of the "M. & H. Division" which had to be traversed, yet he was ordered, at Ashmore, by the defendant with full knowledge of all these facts, to continue the run and act as fireman over his objection. Melvin, the crew dispatcher who originally assigned the crew to this train at Coxton, testified that maybe once a year this type of assignment would be made, but that this was not the usual practice.

After the tank was refilled at Ashmore the train proceeded to Hazelton Shop Office, a distance of 2½ miles. From Hazelton the train continued to Tomhicken and then proceeded to Mount Carmel. It was conceded by the defendant that the run from Ashmore to Tomhicken to Mount Carmel was approximately 50 miles. No water had been taken on between Ashmore and Mount Carmel. At Mount Carmel, Wolbert, the assistant road foreman of engines, climbed aboard the tank and presumably measured the water. He then said something to Neifert the relieving engineer and the train then started back towards Delano, a conceded distance of 21 miles from Mount Carmel with no water being taken on at Mount Carmel although plaintiff had inquired regarding same. In order to reach Delano on the run from Mount Carmel it was necessary to pass Shenandoah, a town conceded to be 15 miles from Mount Carmel. Plaintiff had never been on that run before this day.

When the train came into and was going through Shenandoah, having covered a conceded distance of 65 miles, without having refilled the water tank since its stop at Ashmore, using water even during stops made at Ashmore, Tomhicken and Mount Carmel, in addition thereto, the plaintiff started looking for water by trying the telltale cock on the tank. When no water came out plaintiff looked out to see if there was anything ahead of the train and observing no obstructions for a distance of about 700 or 800 feet, started back over the coals to the manhole covers to test the water there, after first advising Snyder, the telephone man, to watch the stoker because he was going back for a moment to measure the water. This conversation

with Snyder, the telephone man, took place in the cab of the locomotive with the plaintiff speaking in a natural and ordinary voice; Neifert the engineer then being in the cab four or five feet from the plaintiff and Snyder at that moment. Plaintiff then started back over the coals in the tender facing the rear of the forward moving train, and while in a half crouched position and in the act of jumping to the manhole covers was struck in the back, knocked unconscious and caused to sprawl across the manhole covers thereby receiving the injuries for which this action was brought. In the course of going to test the water in the tank he appears to have been hit by a low bridge. The train at the time was proceeding in an easterly direction at the rate of about 20 to 25 miles per hour.

The trial judge left two questions to the jury: The first was whether under the circumstances that were disclosed the railroad was negligent in sending the plaintiff over the route at a time when he had never been over it before, and second whether he was guilty of contributory negligence in leaving the cab without securing the permission of the engineer, when there was evidence of an unwritten rule that imposed a duty to notify the latter. It is to be noted that the plaintiff had testified in his examination before trial that he knew there was a custom and practice to inform the engineer before leaving the cab while the train was in motion.

The judge further charged the jury that the defendant would not be liable if any contributory negligence by the plaintiff was found to be the sole and proximate cause of the accident.

The jury found a verdict for the plaintiff in the sum of $43,166.66. The defendant moved to set aside this verdict. The motion was denied upon the plaintiff's consenting to a reduction of the verdict to the sum of $30,000. From a judgment entered upon the verdict so reduced, the defendant took the present appeal. Though the case is not free from doubt it is our opinion that the judgment should be affirmed.

■ In the first place, we think there is nothing in the fact that the plaintiff had just been over the route on which he was injured before the train was turned on a Y at Mount Carmel and proceeded back toward Delano. A single trip over this route while working and without any instructions as to its dangers from low bridges we think might be found by the jury to be insufficient to justify using a fireman on a route with which he was not more familiar—if unfamiliarity was in itself proof of negligence on the part of his employer.

■ It is possible that in former times it would not have been regarded as negligent to embark firemen upon such a service as that to which the plaintiff was assigned but, under the recent rulings of the Supreme Court, we cannot say that it was beyond reason for a jury to find that it was negligent to send the plaintiff on an unfamiliar route when firemen who were familiar with that route could apparently have been obtained without great difficulty. It would certainly have been safer to send a fireman over the route who was familiar with it and there was evidence indicating that this safer method, if not invariably practised, was generally employed. In such circumstances we think it was required by the recent decisions of the Supreme Court to leave to the jury the question of whether that safer method should not have been chosen. Judge Abruzzo left that question to the jury in a satisfactory charge. Ellis v. Union Pacific R. Co., 329 U.S. 649, 67 S.Ct. 598; Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Blair v. Baltimore & O. R. Co., 323 U.S. 600, 65 S.Ct. 545, 89 L.Ed. 490; Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Bailey v. Central Vermont Ry., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444; Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967; Boston & M. R. R. v. Meech, 1 Cir., 156 F.2d 109 certiorari denied 329 U.S. 763, 67 S.Ct. 124; Boston & M. R. R. v. Kyle, 1 Cir., 156 F.2d 112.

The jury evidently thought that there ought to have been greater care exercised in selecting the crew and that if Palum had not been sent over a route when he was unfamiliar with the dangers he might

encounter he would not have been injured. We cannot say that such a view was without any substantial justification, and if not it was beyond judicial control however doubtful might be its wisdom.

■ The defendant's counsel earnestly argue that the plaintiff's neglect to notify the engineer before leaving the cab was the sole cause of the injury. But this act, though it may have contributed to the injury, occurred at a time when the plaintiff had a reason to fear a shortage of water in the boiler and might naturally be impelled to forget or overlook everything except the immediate emergency which seemed to require prompt ascertainment of the condition of the water supply. Such act or neglect on the part of the plaintiff need not have been regarded by the jury as the sole cause of the accident. On the contrary, his conduct might be considered not so negligent as to be a superseding cause but only one which contributed to the accident along with the defendant's failure to assign a fireman who was properly qualified for the duty on the particular run. Restatement, Torts § 447; Keith v. Wheeling & L. E. Ry. Co., 6 Cir., 160 F.2d 654, certiorari denied, 68 S.Ct. 67. The defendant argues that the decision of this court in Willis v. Pennsylvania R. Co.[1] should have controlled the trial judge in the case at bar and that it required the direction of a verdict for the defendant on the ground that plaintiff's conduct in leaving the cab in disregard of the rule and failing to observe the low bridge in time to prevent being hit was the sole cause of his injury. But Willis v. Pennsylvania R. Co. may be distinguished on the ground that the only duty of the plaintiff there was to watch and if he had watched the injury to him would not have happened. Here a duty of the plaintiff was to see that there was sufficient water in the boiler and it was in attending to the performance of that very duty, albeit with negligence in one aspect thereof, that he sustained the injury. It is not certain that if he had notified the engineer that he was going to leave the cab in order to sound the tank that he would have been warned against the low

bridge for it is entirely possible that the engineer would have expected him to look out for himself and to watch for such a danger as he encountered. What the plaintiff seems to have done was to have failed to be watchful enough for obstacles as well as to have forgotten to notify the engineer that he was going to leave the cab. We think the inadvertent neglect to observe the rule, while probably an act of contributory negligence to be considered by the jury in reduction of his damages, was not a bar to his claim.

For the foregoing reasons the judgment is affirmed.

---

[1] 2 Cir., 122 F.2d 248, certiorari denied 314 U.S. 684, 62 S.Ct. 187, 86 L.Ed. 547.